OCEAN ENERGY II, INC., and Coteau
Services, Inc., Plaintiffs–Appellants,

v.

ALEXANDER & ALEXANDER, INC.,
et al., Defendants–Appellees.

No. 88–3155.

United States Court of Appeals,
Fifth Circuit.

March 27, 1989.

Donald V. Organ, New Orleans, La., for plaintiffs-appellants.

Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Pauline F. Hardin, John C. Combe, James P. Browning, Jr., New Orleans, La., for defendants-appellees.

Before THORNBERRY, KING, and JONES, Circuit Judges.

THORNBERRY, Circuit Judge:

Plaintiffs-appellants Ocean Energy II, Inc. and Coteau Services, Inc. (at times collectively referred to herein as "Pressure Services"[1]) brought this suit against its insurance agent Alexander & Alexander, Inc., a Louisiana corporation, (A & A) and others[2] alleging fraud in the sale of an insurance program in violation of 18 U.S.C. § 1961 *et seq.*, the civil RICO statute. On motion for summary judgment, the district court dismissed appellants' RICO claim for lack of standing or, alternatively, for fail-

ure to establish an essential element of its cause of action. Having found that appellants met the burden of proof necessary to oppose a motion for summary judgment on these issues, we now reverse and remand.

## I. *Background*

As this is an appeal from summary judgment, we recite the evidence presented to the district court in the light most favorable to Pressure Services, the nonmovant. *See Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir.1986).

Pressure Services is engaged in various oilfield-related businesses. For several months prior to the events forming the basis of the current dispute, Pressure Services carried insurance with the Transit Casualty Company (Transit) to protect itself against losses arising from worker's compensation claims and general accident liability. Pressure Services purchased this coverage through G & K Insurance Company, a local agent, who negotiated with Carlos S. Miro of Miro & Associates Risk Management, Inc. (Miro). Miro, in turn, issued the Transit policy which remained in effect from March 1 to July 1, 1984.

Miro's role in the sale of Transit insurance is potentially central to this litigation; therefore, we briefly review his involvement in the present dispute. Through several agency agreements, Transit appointed Miro to act as its "sub-agent." This arrangement supposedly gave Miro the authority to approve and issue policies without the need to procure Transit's prior approval so long as Miro observed the parameters set forth in the agency agreement. In fact, Miro was furnished with blank Transit policies to facilitate the direct placement of insurance.

---

**1.** Ocean Energy II, Inc. is the successor corporation to Pressure Services, Inc. and nine other oilfield-related corporations. Coteau Services, Inc. is the successor corporation to Coil Tubing & Nitrogen Service, Inc. The fraudulent activities alleged by appellants arose before these successions occurred. Since the target of the alleged fraud was Pressure Services, Inc., we employ its name as representative of all appellants.

**2.** The original complaint also named defendant Alexsis, Inc., a sister subsidiary and claims handler for A & A. By subsequent amendment, appellants added as defendants Alexsis Risk Management Services, Inc. and the alleged parent company of the other three defendants Alexander & Alexander, a Maryland corporation.

Early in the summer of 1984, Pressure Services expressed dissatisfaction with the high cost of the Transit insurance. It therefore contacted A & A, another local agent through which Pressure Services on occasion had purchased insurance in the past, to seek a more favorable program. Although A & A maintains it procured two quotations for Pressure Services' review—one from Transit and a second from Denver Gray Company, the record contains no documentation reflecting the details of the latter proposal. By contrast, A & A appears to have undergone substantial negotiations with Miro to obtain a comprehensively drafted proposal of continued coverage through Transit. The Miro/Transit proposal submitted by A & A to Pressure Services outlined specific coverages and attendant costs. As the proposal document explains, the program's costs were to be based on a "self-insured retention concept" under which the underwriter develops a *composite rate* which normally is applied to payrolls to determine insurance cost. This composite rate consisted of (1) an insurance and service fee and (2) a loss fund.

A loss fund is a fund into which premiums are paid. The fund earns interest. Monies from the fund are used to pay losses only if and when they arise. If losses do not occur or do not occur to the extent of the fund's balance, the fund's surplus and unused, accumulated interest are returned to the insureds. The loss fund concept is distinguishable from a fixed premium arrangement under which insureds pay premiums regardless of whether losses arise. The relevant effects of a loss fund program are twofold. First, the net costs to the insureds will be lower than under a standard policy, and second, as a consequence, the carrier's income will be diminished to the extent the loss fund is returned to the insureds.

Based on A & A's presentation of Miro's proposal, Pressure Services purchased the Transit program which remained in effect from July 1, 1984 to March 1, 1985. The manner in which this policy was sold to Pressure Services is the subject of the present lawsuit. In December 1985, more than nine months after the policy expired,

Transit was declared insolvent by a Missouri court. Consequently, claims which Pressure Services had submitted to Transit while its policy was in effect went unpaid. Pressure Services now seeks to recover the costs attributable to these uninsured losses.

Pressure Services brought suit against A & A, A & A's parent corporation, and A & A's claims handler alleging that they employed the mails to fraudulently sell an illegal insurance program. Specifically Pressure Services claimed that the use of a composite rate structure violated a variety of Louisiana's insurance regulations, that the use of mails constituted mail fraud in violation of 18 U.S.C. § 1341, and that the occurrence of two or more incidents of mail fraud was sufficient to state a RICO claim under 18 U.S.C. §§ 1962(a)–(d).

Although section 1962 enumerates four distinct RICO violations, common elements apply to all four offenses. We recently noted that "[r]educed to its three essentials, a [violation of section 1962] must involve: (1) a *person* who engages in (2) *a pattern of racketeering activity* (3) connected to the acquisition, establishment, conduct, or control of an *enterprise*." *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 242 (5th Cir.1988). In addition to alleging these essential elements, a RICO plaintiff must have standing to sue pursuant to 18 U.S.C. § 1964(c).

In response to Pressure Services' complaint, the defendants-appellees filed two motions to dismiss for failure to state a RICO claim and one for partial summary judgment. Our review of the motions indicates that the defendants challenged the sufficiency of allegations relating to (1) Pressure Services' standing, (2) the existence of an "association in fact" enterprise, (3) the existence of incidents of mail fraud, (4) the existence of a pattern of racketeering, and (5) the timeliness of the lawsuit. The district court concluded that "assuming *arguendo*" that the plaintiffs properly alleged all other elements, the lack of standing and failure to present evidence creating a factual dispute as to the existence of an "association in fact" enterprise

warranted dismissal of Pressure Services' claims. Consequently, the district court granted defendants' motion for summary judgment.

Because the district court only ruled on the issues of standing and the existence of an "association in fact" enterprise, we confine our analysis to these two issues. *See KSLA–TV, Inc. v. Radio Corp. of America,* 693 F.2d 544, 546 (5th Cir.1982) (concluding that issues raised by summary judgment motion but not addressed by district court's ruling should be "disposed of in the first instance by the district court"). For purposes of this appeal, we assume, as the district court did, that A & A's use of the mails to sell illegal insurance programs constituted a pattern of racketeering activity. Based *solely on this assumption,* we have used phrases such as "A & A's fraudulent acts" or "A & A's predicate acts." This is merely for convenience. On remand, Pressure Services will bear the burden of establishing all elements of its RICO claims including a pattern of racketeering activity.

## II. *Claims Abandoned on Appeal*

We commence by noting that Pressure Services initially alleged that various persons and/or entities other than itself had suffered injuries by reason of appellees' fraudulent acts. For example, Pressure Services' complaint claimed that appellees' scheme defrauded citizens of Louisiana, "others" in the insurance industry, Louisiana insurance buyers, and Transit of the protection of the insurance laws of the state of Louisiana. The district court dismissed the claims based on these injuries because, as the Supreme Court had recently held in *McNally v. United States* [3] and *Carpenter v. United States,* [4] the mail fraud statute, 18 U.S.C. § 1341, only allows recovery for damages to one's property rights.

Pressure Services has failed to advance adequately arguments in its appellate brief challenging the district court's disposition of the claims relating to these "loss of protection" injuries. We therefore conclude that claims based on these injuries have been abandoned. *See United States v. Ballard,* 779 F.2d 287, 295 (5th Cir.), *cert. denied,* 475 U.S. 1109, 106 S.Ct. 1518, 89 L.Ed.2d 916 (1986); *Netto v. National R.R. Passenger Corp. (AMTRAK),* 863 F.2d 1210, n. 4 (5th Cir.1989).

## III. *Standing to Sue under Civil RICO*

Pressure Services' complaint alleged that it suffered numerous injuries resulting from Transit's insolvency including: attorneys' fees and other litigation costs incurred defending claims brought by accident victims, indemnity payments in the form of damages and compensation to claimants, medical and administrative expenses on worker's compensation and seaman claims, loss of good will, and damage to business operations due to "starvation of liquidity." In essence, Pressure Services' claims can be reduced to the contention that the appellees fraudulently induced it to "purchase insurance from Transit with a scheme that was at the same time diminishing the surplus of Transit causing its demise and rendering the Pressure Services policies worthless."

The district court properly observed that a plaintiff may sue for treble damages under the RICO statute only if he has suffered injury to "his business or property *by reason of* a violation of section 1962." 18 U.S.C. § 1964(c). The court reasoned that Pressure Services suffered injuries, if at all, because Transit had been rendered insolvent, not "by reason of a violation of section 1962." Thus, the court concluded, any injury to Pressure Services "as a result of the alleged conduct constituting a pattern of racketeering activity was indirect" and that dismissal was proper because RICO only allows recovery for direct injuries.

In determining RICO standing, the district court referred to Section 1964(c)'s "by reason of" language *and* an analysis of direct versus indirect injuries. This ap-

---

3.  483 U.S. 350, 107 S.Ct. 2875, 97 L.E.2d 292 (1987).

4.  484 U.S. 19, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987).

proach reflects a juxtaposition of two unrelated standing issues. In that this approach may have been engendered by jurisprudence from this circuit, we pause to review developments in the area of RICO standing as they relate to the case before us.

### A. RICO's Standing Requirement: Section 1964(c)

■ Section 1964(c) embodies the only standing requirement which the civil RICO statute *itself* imposes. Only persons who have been injured "by reason of" the commission of predicate acts have standing to bring suit under section 1964(c). *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.E.2d 346 (1985). Interpreting the "by reason of" language the Supreme Court in *Sedima* noted that "the compensable injury necessarily is the harm *caused by* predicate acts sufficiently related to constitute a pattern" and that "recoverable damages ... will *flow from* the commission of predicate acts." 105 S.Ct. at 3285 (emphasis added). In *Zervas v. Faulkner*, 861 F.2d 823 (5th Cir.1988), we rejected the position taken by the Seventh, Eleventh and possibly Third Circuits interpreting the language in *Sedima* as allowing recovery only for *direct* injuries. Instead, we stated that "[a] requirement that the nexus between the injury and a predicate act be 'direct' may, at least in some circumstances, be overly restrictive." *Id.* at 833.

■ Rather than construing section 1964(c) as imposing an artificial distinction between direct and indirect injuries, we believe that *Sedima*'s "caused by" and "flow from" language instructs us to employ a traditional causation analysis in determining whether a RICO plaintiff has been injured "by reason of" a section 1962 violation. Thus, a person will be considered injured "by reason of" a RICO violation if the predicate acts constitute (1) factual (but for) causation and (2) legal (proximate) causation of the alleged injury. *See Zervas* at 834–35; *Old Time Enterprises, Inc. v. Int'l Coffee Corp.*, 862 F.2d 1213, 1218 (5th Cir.1989) ("proximate causal relation must exist between the RICO predicate act and the plaintiff's damages"); *Sperber v. Boesky*, 849 F.2d 60, 63–66 (2d Cir.1988) (adopting factual and legal causation analysis); *Brandenburg v. Seidel*, 859 F.2d 1179, 1189 (4th Cir.1988). *But see Bankers Trust Corp. v. Rhoades*, 859 F.2d 1096 (2d Cir.1988) (despite citing *Sperber*, held that "by reason of" language only imposed factual causation).

### B. Non–RICO Standing Requirements

On occasion we have incorporated, although not always expressly stating so, standing requirements derived from state laws and the Bankruptcy Code into the civil RICO statute. These requirements are wholly unrelated to and must be satisfied in addition to section 1964(c)'s "by reason of" language. At times we have referred to state law or Bankruptcy Code standing guidelines as creating a direct/indirect injury dichotomy in which only direct injuries are compensable under RICO. Although causation is the crux of section 1964(c)'s standing requirement, the direct/indirect injury analysis continues to be meaningful in determining standing under some non-RICO statutory schemes. We discern three situations in which the direct/indirect distinction has been employed as a shorthand means of describing which of related persons may bring suit for injuries.

### Situation 1: Derivative Claims

The indirect/direct injury distinction has been used most often in delineating when a shareholder may bring an action in his individual capacity for injuries suffered by a corporation. We have held that shareholders may not bring a RICO action where the racketeering activity was directed against the corporation, where the injury to the shareholders merely derived from and thus was not distinct from the injury to the corporation, and where *state law* provided that the sole cause of action accrued to the corporation. *See Leach v. Federal Deposit Ins. Corp.*, 860 F.2d 1266, (5th Cir.1988); *Crocker v. Federal Deposit Ins. Corp.*, 826 F.2d 347 (5th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1075, 99 L.Ed.2d 235 (1988).

In *Leach* minority shareholders of a bank brought suit against the corporate directors alleging that they had made material misrepresentations in several annual reports. The plaintiffs-shareholders further alleged that as a direct result of the misrepresentation their stock was rendered worthless. We affirmed the dismissal of the shareholders' RICO claims because, under Texas law, a shareholder does not have a right of action against a director who has mismanaged the affairs of the corporation. The only right of action the shareholder has is derivative. *Id.* at 1273. Thus, as Texas law applies to the *Leach* situation, the corporation, not the shareholders, has standing to sue regardless of whether the suit is brought as a state law breach of fiduciary duty claim or as a RICO claim. Addressing concerns of incorporating state law standing requirements into the civil RICO statute, we said

> [such incorporation] implicates a serious problem of uniformity of federal law throughout the states. However, on balance, the incorporation of state law to determine whether a shareholder has been injured under RICO is preferable to generating federal common law in this area.

*Leach* at 1273 n. 14.

### Situation 2: Actions Analogous to Derivative Suits

On at least one occasion we have used the standing analysis employed in the derivative suit context as a guide in determining RICO standing in closely related situations. In *Adams–Lundy v. Association of Professional Flight Attendants*, 844 F.2d 245 (5th Cir.1988), a faction of union members brought suit against a second faction alleging, *inter alia,* mismanagement of union funds in violation of fiduciary duties. We assumed without deciding (as we do now) that the district court correctly analogized the plaintiffs' claim to a shareholder derivative suit. We held that only the union itself had been injured directly and that the union members did not have standing to pursue recovery for their indirect injuries under RICO.

### Situation 3: Creditors' Claims

In *Carlton v. BAWW Inc.*, 751 F.2d 781 (5th Cir.1985), a judgment-creditor instituted a state-law fraudulent transfer action against an individual. Subsequently the individual filed for protection under Chapter 7 of the Bankruptcy Code. Such filing triggered section 362(a)'s automatic stay provision which, we held, precluded the creditor from continuing to pursue her state-law action. We expressly noted that bankruptcy did not extinguish the right to recover the property the debtor may have fraudulently transferred. Rather, "[b]ankruptcy simply caused the right to vest in the trustee and placed the future of this lawsuit within the control of the bankruptcy court." *Id.* at 785. *Carlton* stands for the proposition that only the trustee in bankruptcy, not individual creditors, has standing to recover property belonging to the estate. Although *Carlton* did not involve RICO claims, courts of other jurisdictions have extended this proposition into the RICO context.

Relying on *Carlton,* the District Court for the Northern District of Illinois denied standing to a creditor seeking to assert a RICO claim to recover property fraudulently transferred by a bankrupt corporation's officers. *Dana Molded Prods. Inc. v. Brodner,* 58 B.R. 576 (N.D.Ill.1986). The court reasoned that

> [a]llowing plaintiffs to proceed to judgment against defendants would diminish their pool of assets on which the trustee could levy, and thus result in the very sort of inequitable distribution the bankruptcy laws are designed to avoid.

*Id.* at 579. The Sixth Circuit, in holding that an employee of a bankrupt corporation lacked standing to pursue a RICO claim based on fraudulent misrepresentations made to the corporation, intimated that, for reasons of judicial economy, a creditor of a bankrupt corporation should also be denied standing. *See Warren v. Manufacturer Nat. Bank of Detroit,* 759 F.2d 542, 545 (6th Cir.1985). We hasten to add that the Second Circuit squarely rejected the notion that the Bankruptcy laws create "an additional, special requirement of standing to

[the plaintiff's] civil RICO claim." *Rhoades*, 859 F.2d at 1101. We find *Rhoades* distinguishable from *Carlton* and *Warren* because in that case the alleged misrepresentations were directed *to the creditor* to induce its confirmation of a reorganization plan.

The above situations are not meant to be exhaustive examples of cases in which non-RICO standing requirements have been incorporated into the civil RICO statute. We express no opinion as to whether other standing requirements should be incorporated into RICO. We merely intended this discussion to be illustrative of the various potential standing issues which have arisen when asserting RICO claims in differing circumstances and which the courts have resolved to some extent by distinguishing direct from indirect injuries. With this background we turn to Pressure Services' standing.

### C. *Pressure Services' Standing to Assert RICO Claims*

■ As mentioned above, whether standing exists to assert a RICO claim entails a two-part inquiry. First, we must determine whether any non-RICO standing requirements apply and have been satisfied. Second, if non-RICO standing requirements have been met or if, given the alleged injury, none apply, the RICO plaintiff must then show that it suffered injuries "by reason of" the commission of a predicate act. We adopt this two-part analysis to evaluate Pressure Services' standing as to the injuries it alleges.[5]

Pressure Services' pleadings and appellate brief articulate two separate claims from which injuries allegedly derive. First, Pressure Services contends that the appellees' insurance sales violated the rate structure imposed by Louisiana law. By selling a policy based on composite rates instead of fixed or guaranteed rates, appellees were able to sell Transit policies for less

than the legal cost. As a result, the appellees defrauded Transit of insurance premiums and this diminution in income partially caused Transit's demise. In turn, Transit's demise rendered Pressure Services' policy worthless forcing Pressure Services to bear certain losses.

■ We believe it is more accurate to characterize Pressure Services' first claim as incidental to the fraud appellees allegedly perpetrated on Transit. The actual damage—the difference between the illegal composite rate premiums Transit received and the full premiums which the Pressure Services' policy should have generated—is property of the bankrupt estate. We therefore incorporate the Bankruptcy laws' standing requirement into the RICO statute. Following the reasoning in *Carlton* and *Dana Molded* we hold that only the trustee in bankruptcy has standing to bring a RICO claim for monies owed to the bankruptcy estate. We therefore affirm the summary judgment to the extent that it dismisses any claim (if the pleadings can be read to assert one) for damages arising from fraud perpetuated *on Transit.*

■ Pressure Services also claims that "but for the use of illegal inducements and unfair competitive practices by the Defendants in selling this program to the Plaintiffs, they would not have been insured by Transit and would not have been affected by its demise for those reasons." That is, Pressure Services alleges that it was defrauded into becoming an insured of Transit. Furthermore, because it had outstanding claims when Transit was rendered insolvent, it seeks to recover the following damages: attorneys' fees and other litigation costs incurred defending claims brought by accident victims, indemnity payments in the form of damages and compensation to claimants, medical and administrative expenses on worker's compensation and seaman claims, "costs of defense of

---

5. For purposes of this discussion we have equated "injuries" and "damages." Thus, to recover for certain alleged damages, Pressure Services must show they were sustained "by reason of" the predicate acts. *See Sperber,* 849 F.2d at 63 ("By damages caused only 'indirectly,' we mean

'racketeering' injury ... caused by the total effect of the pattern of racketeering in the enterprise"). *See also Sedima,* 105 S.Ct. at 3285 (recoverable damages "by reason of a violation of section 1962(c) will flow from the commission of predicate acts").

liability and contractual claims," loss of good will, and damage to business operations due to "starvation of liquidity."

Clearly, Pressure Services was the target and victim of the alleged scheme to induce it to purchase insurance from Transit. This is not a situation in which persons suffer derivatively from fraud perpetrated on a corporation or a bankruptcy estate. Moreover, the damages Pressure Services seeks cannot be characterized sensibly as property of Transit's bankruptcy estate. *Only* Pressure Services has standing to sue for these damages allegedly caused by fraud directed against it. Thus, unlike *Carlton* and *Dana Molded*, the bankruptcy laws do not prohibit Pressure Services from bringing this claim in its individual capacity. This, however, does not end the standing inquiry. Pressure Services must also meet the RICO standing requirement by showing that it suffered injuries "by reason of" the alleged predicate acts.

An analysis of section 1964(c)'s standing requirement requires that we first ask whether the predicate acts constitute factual causation of the alleged damages. Pressure Services claims that "but for" the inducements it would not have continued to be covered by Transit and therefore would not have suffered any of the damages it now seeks. We emphasize that the relevant inquiry is whether the damages claimed by Pressure Services were caused by A & A's misrepresentations concerning the policy's rate structure.[6] To meet the test for factual causation, Pressure Services must show that "but for" the incidents of mail fraud it would not have purchased insurance from Transit and therefore would not have suffered by Transit's insolvency.

Of course, Pressure Services need not *prove* factual causation at this stage in the proceedings. Rather, Pressure Services need only meet the burden of proof necessary to oppose appellees' summary judgment motions. On motions for summary judgment, the movant bears the initial burden of " 'showing'—that is, pointing out to

the District Court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986), *cert. denied*, —— U.S. ——, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988). Our review of A & A's motions for summary judgment, motions to dismiss, and response to Pressure Services' opposition to the motions, reveals a total absence of any indication on A & A's part that Pressure Services' evidence fails to establish that the alleged damages were caused by A & A's inducements. A & A did submit affidavits indicating that two proposals were presented to Pressure Services and that the ultimate choice of policies rested exclusively with Pressure Services. These affidavits however fail to "point out" a lack of evidence on the causation issue. A & A also argued for the first time in its appellate brief that it did not induce Pressure Services to remain with Transit. However, we decline to review arguments first raised on appeal. *See C.F. Dahlberg & Co., Inc. v. Chevron*, 836 F.2d 915, 920 (5th Cir.1988) ("In the absence of exceptional circumstances which would result in a miscarriage of justice, questions not presented to the trial court will not be considered on appeal."). Because A & A failed to sustain its initial burden of proof, we conclude that the district court should not have granted summary judgment dismissing Pressure Services' claim that but for the predicate acts it would not have suffered the losses it now seeks to recover.

Even if A & A's motion for summary judgment had pointed to a lack of evidence to support causation, Pressure Services' "Memorandum in Opposition to Defendants' Motions" is sufficient to withstand a motion for summary judgment. The nonmovant may oppose a motion for summary judgment "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex*, 106 S.Ct. at 2554. Pressure Services met this burden when it submitted the affidavit of Albert Gunther, Jr., a vice-president of

---

6. As we have mentioned previously, for purposes of this appeal, we have assumed without

deciding the existence of incidents of mail fraud.

Pressure Services, stating that "[h]ad [Pressure Services] been ... informed [of the program's illegality] they would have insisted that the programs be rewritten in another company." This sworn statement is enough to raise a genuine issue of material fact as to whether the predicate acts factually caused the alleged injuries. Summary judgment is inappropriate to resolve this factual dispute.

"But for" causation is not enough to satisfy section 1964(c)'s "by reason of" requirement. Pressure Services must also show that its alleged injuries, i.e. the damages it seeks, were proximately caused by A & A's predicate acts. *Zervas*, 861 F.2d at 834. A & A did not address the sufficiency of the evidence supporting an allegation of proximate cause in its motions. The extent of the discussion in the motions relating to standing focused exclusively on the direct/indirect injury distinction and the repercussions of *McNally*. A & A addressed the issue of proximate cause for the first time on appeal. Again, we decline to address issues in this procedural posture. *See C.F. Dahlberg*, 836 F.2d at 920.

Even at this moment, the exact measure of damages Pressure Services allegedly sustained has not been clearly set forth. On remand, Pressure Services will bear the burden of proving that each alleged injury, i.e. each allegation of damages, has been factually and legally caused by the predicate acts of mail fraud. Moreover, speculative damages today may gain sufficient certainty by trial. We therefore need express no opinion at this juncture as to their recoverability.

## IV. *"Association in fact" Enterprise*

■ The district court also based its dismissal of Pressure Services' RICO claims on Pressure Services' failure to present evidence necessary to give rise to a genuine issue of material fact concerning the existence of an "association in fact" enterprise. A plaintiff alleging a RICO claim must assert the existence of an enterprise. *Manax v. McNamara*, 842 F.2d 808, 811 (5th Cir.1988). "Enterprise" is defined as including "any individual, partnership, corporation, association ... or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Pressure Services set forth the following *alternative* enterprises:

> The enterprise consisted of the association in fact of Carlos S. Miro, Miro & Associates, Alexander & Alexander, Inc. of Louisiana, Alexsis, Inc., Alexander & Alexander, Inc. of Maryland, Alexsis Risk Management Services, Inc. and the Transit Casualty Company.

> In the alternative ... the Transit Casualty Company was the enterprise and the defendants, Alexander & Alexander, Inc. of Maryland, and Alexsis Risk Management Services, Inc. in association with Carlos S. Miro and Miro & Associates through a pattern of racketeering maintained control of the enterprise, Transit Casualty Company in selling and marketing of Transit Casualty Company insurance.

The district court held that these allegations did not give rise to an

> association in fact enterprise ... separate and apart from this pattern of racketeering activity. There is no evidence that the defendants were associated in any manner separate and apart from the pattern of business activity in which they were engaged. The culpable person(s) cannot constitute the 'enterprise.'

Quoting *Atkinson v. Anadarko Bank & Trust Co.*, 808 F.2d 438, 439 (5th Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 3276, 97 L.Ed.2d 780 (1987). As both parties recognized, this terse holding implicates two separate problems.

■ First, as we have noted on several occasions, "[a]n enterprise must be 'an entity separate and apart from the pattern of activity in which it engages.'" *Manax*, 842 F.2d at 811. That is, an enterprise must be more than a summation of predicate acts. "'Association-in-fact' enterprises ... must have an ongoing organization or be a continuing unit, such that the enterprise has an existence that can be defined apart from the commission of the predicate acts." *Montesano v. Seafirst Commercial Corp.*, 818 F.2d 423, 427 (5th Cir.1987).

Continuity or the ongoing nature of an association in fact is the linchpin of enterprise status.

■ We believe Pressure Services has presented sufficient evidence to give rise to a factual dispute regarding the continuity and hence the enterprise status of the association of Miro, A & A, Alexsis, and Alexsis Risk Management. Although the enterprise must be defined apart from the pattern of racketeering activity, "if the individuals associate together to commit several criminal acts, their relationship gains an ongoing nature, coming within the purview of RICO." *Montesano*, 818 F.2d at 427. Pressure Services' pleadings and evidentiary materials suggest that these same persons have associated to commit the same predicate acts on at least one other occasion.

In a seemingly identical scheme, A & A issued a Transit policy based on composite rates to Crown Point Industries, Inc., a Louisiana corporation. While Crown Point's copy of the policy suggested that composite rates were used, a subsequent correspondence from Transit indicated that Transit's copy of the policy reflected manual rates. A Transit official remarked that "the policy did not contain a composite rate endorsement. The Transit Casualty Company would not have approved of the use of a composite rate in the State of Louisiana since to do so would put us in violation of our filings." The Crown Point policy was issued by A & A through Miro & Associates.

At the very least, the affidavits and documentary evidence relating to the sale of insurance to Crown Point establish a factual question as to whether the association engaged in more than one episode of racketeering and thus whether the association gained an "ongoing nature." This continuity is all that *Montesano* requires. We therefore hold that a genuine issue of material facts exists as to the continuity of the alleged association in fact and hence as to its enterprise status.

■ Furthermore, we cannot overlook the alternative allegation that Transit itself constituted the enterprise. The appellees'

motion for summary judgment initially was a partial motion for summary judgment confined to contesting the evidence supporting the "association in fact" enterprise. There can be no question that Transit satisfies section 1961(4)'s definition of enterprise without resorting to the residual "association in fact" category. Transit is a corporation. The district court apparently dismissed this alternative enterprise because Pressure Services failed to present evidence that A & A, Miro, and Alexsis Risk Management controlled Transit. Control, however, is relevant to establishing a violation of section 1962(b), not to the existence of an enterprise. We therefore conclude that the district court erred in holding that Transit itself did not constitute a RICO enterprise.

The district court's statement that "[t]he culpable person(s) cannot constitute the 'enterprise'" raises a second problem. We have said that "the violator of section 1962(c) who commits the pattern of predicate racketeering acts must be distinct from the enterprise whose affairs are thereby conducted." *Old Time Enterprises*, at 1217. For purposes of the present case, we need not open this Pandora's box. Appellees repeatedly urge that this is not an issue in this case and that the appellants' briefing on this point is a red herring. Furthermore, at one point in their brief the appellees state that "as an abstract proposition of law, the enterprise-person distinction never should apply to, or even arise in, a true association-in-fact enterprise." These remarks together with the fact that the person-enterprise distinction was not addressed in the motions indicate that the issue, if ever raised, has been abandoned for the remainder of this case. We decline to address it further, and, based on our "law of the case doctrine," instruct the district court to follow suit.

## V. *Conclusion*

Based on the foregoing analysis, we REVERSE the judgment dismissing the RICO claims for lack of standing or for failure to establish an "association in fact" enterprise. Appellants have carried the burden

necessary to oppose the motions for summary judgment on these issues. We therefore REMAND the case for proceedings consistent with this opinion.