NEWPORT LIMITED, etc.

v.

SEARS, ROEBUCK & CO.

Civ. A. No. 86–2319.

United States District Court,
E.D. Louisiana.

May 21, 1990.

Phillip A. Wittmann, Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, La., for plaintiff.

Harry McCall, Jr., Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, La., for defendant.

## ORDER AND REASONS

ARCENEAUX, District Judge.

This matter comes before the Court on motion to dismiss filed by Sears, Roebuck & Co. ("Sears"), seeking the dismissal of two claims made by the plaintiff, Newport Limited ("Newport"), including Newport's seventh cause of action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c). Sears argues that Newport has failed to allege facts sufficient to meet RICO's "continuity" requirement, and that the allegations relating to predicate acts and pattern, association with and participation in an enterprise, and damages are legally insufficient. For the reasons set forth hereinafter, the Court has determined that dismissal of the RICO claim is appropriate, and that the pendent state claims should be dismissed as well.

Discovery has been completed in this matter, and a motion for summary judgment has been filed by Sears (Doc. 442) in which its motion to dismiss the RICO claim is effectively incorporated, and in opposition to which Newport has incorporated its argument. (Doc. 448, p. 82). The facts have been extensively briefed by the parties, and to the degree that undisputed facts are relied upon, the motion to dismiss

shall be treated as a motion for summary judgment under Fed.R.Civ.Pro. 56(b).[1]

The facts germane to this Court's analysis of the RICO claim are largely undisputed. The parties signed a letter dated January 9, 1985, in which Sears stated:

> We have analyzed the proposal offered by you for the construction of a new import/export warehousing facility to be located within the Newport Industrial Park, New Orleans, Louisiana, such construction to be on a build-to-suit basis. Based upon our analysis and subject to the preparation of mutually agreeable legal documentation, we are prepared to enter into the transaction on substantially the following terms and conditions....
>
> It is to be understood that the matters contained in this letter will form the basis of a much more detailed document, the terms and conditions of which are subject to the mutual agreement of the parties. It is not intended to be a comprehensive statement of our respective rights, duties and obligations which will be fully set forth in said document.

Newport claims that sometime in the summer of 1986, "Sears management had made the decision not to go forward with the proposed project because of a change in their philosophy concerning their " 'replenishment program' " and that "[d]espite having internally reached the decision not to go forward with the project, Sears failed to communicate its decision to Newport opting instead to misrepresent its true intentions to Newport by advising that the project would continue as planned and agreed between the parties." (Doc. 323, p. 14). At the same time, Newport claims that the gist of the fraud is that Sears sought to create a contract dispute with Newport in order to coerce Newport into withdrawing from the project and shift the blame for the failure of the project from Sears to Newport. (See e.g.: Doc. 448, p. 23, 29, 79–81, att. p. 11, 13, 24).[2] Newport sets forth as predicate acts alleged viola-

---

1. Although the Court has ruled on Sears' motion to strike privileged materials, its opinion herein would remain unchanged even if evidence otherwise deemed privileged were considered.

2. There is, of course, an inherent inconsistency in these allegations to be noted, which is otherwise pertinent to Newport's lack of specificity, discussed *infra*.

tions of mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343, between July 1985 and May 1986. (Doc. 343, pp. 16–21).

■ In general, RICO liability requires proof of the existence of an enterprise, the defendant's employment by or association with that enterprise and the defendant's conduct of or participation in the conduct of the enterprise's affairs through a pattern of racketeering activity. *United States v. Cauble*, 706 F.2d 1322, 1333 (5th Cir.1983), *cert. denied*, 465 U.S. 1005, 104 S.Ct. 996, 79 L.Ed.2d 229 (1984). The defendant must be one who engages in a pattern of racketeering activity connected to the acquisition, establishment, conduct or control of an enterprise." *Howell Hydrocarbons, Inc. v. Adams*, 897 F.2d 183, 190 (5th Cir.1990). Liability under § 1962(c)[3] is visited upon those persons "who being employed by or associated with ... an enterprise, conducts or participates in the conduct of its affairs through a pattern of racketeering activity." *H.J., Inc. v. Northwestern Bell Telephone Co.*, — U.S. ——, 109 S.Ct. 2893, 2897, 106 L.Ed.2d 195 (1989).

■ In *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 242 (5th Cir. 1988), *cert. denied*, — U.S. ——, 109 S.Ct. 1531, 103 L.Ed.2d 836 (1989), the Fifth Circuit delineated how "the principle of continuity limits the types of persons, patterns and enterprises that civil RICO may reach." The principle of continuity requires that the RICO person be one that either poses or has posed a continuous threat of engaging in acts of racketeering. Generally, that continuity is supplied by pleading the existence of a pattern of racketeering activity. However, "[t]he continuous threat requirement may not be satisfied if no more is pled than that the person has engaged in a limited number of predicate racketeering acts." *Delta Truck*, 855 F.2d at 242.

In *H.J., Inc., supra*, the Supreme Court established that a RICO pattern requires a showing that the racketeering predicates are related and that they amount to or pose a threat of continued criminal activity. With regard to continuity, the Supreme Court held:

"Continuity" is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition ... It is, in either case, centrally a temporal concept—and particularly so in the RICO context, where *what* must be continuous, RICO's predicate acts or offenses, and the *relationship* these predicates must bear one to another, are distinct requirements. A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct. Often a RICO action will be brought before continuity can be established in this way. In such cases, liability depends on whether the *threat* of continuity is demonstrated.

*H.J., Inc.*, 109 S.Ct. at 2901 (emphasis original).

The Supreme Court concluded that related predicates occurring with some frequency over at least six years may be sufficient to satisfy the continuity requirement, as would a showing at trial that such predicates were a regular way of conducting the defendant's business, or a regular way of conducting or participating in the conduct of the alleged and ongoing RICO enterprise. *H.J., Inc.*, 109 S.Ct. at 2906. The Court rejected the argument that very short periods of criminal activity that do not carry a threat of continued criminal

---

**3.** The statute provides:
(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

activity fall within the reach of RICO: "... when Congress said predicates must demonstrate 'continuity' before they may form a RICO pattern, it expressed an intent that RICO reach activities that amount to or threaten long-term criminal activity." *H.J., Inc.*, 109 S.Ct. at 2902, fn. 4.

The Fifth Circuit has applied *H.J., Inc.*'s pattern requirement in two recent cases. In *Howell Hydrocarbons, supra*, a single misrepresentation or fraudulent statement was found insufficient in the absence of proof of activities that indicate long-term criminal activity. In *Landry v. Air Line Pilots Assn. Int'l AFL–CIO*, 901 F.2d 404 (5th Cir.1990), *reh. granted in part & denied in part* (5th Cir. Ap. 27, 1990), the Fifth Circuit singled out the allegation that one of the defendants had fraudulently received and continued to receive retirement benefits for a number of years as a fact relevant to the existence of a continuing threat. In finding a continuing threat adequately pleaded, the Court ignored three acts of alleged mail fraud directly involving the plaintiffs, which took place over a period of approximately one month, thereby implicitly finding that such acts insufficiently alleged a closed-end pattern by virtue of a lack of continuity.

█ Here, the predicates pleaded by Newport are alleged acts of mail and wire fraud between July 1985 and May 1986. (Doc. 323, pp. 16–21). The Court finds, as a matter of law, that these acts do not provide the continuing threat required of a closed-ended RICO pattern. Neither do they constitute, implicitly or explicitly, the continuous threat required for an open-ended pattern. No allegations relating to an open-ended are pleaded, and none exist under the facts relied upon by Newport in support of its claims in this matter.

In addition, Newport has not shown that all of the predicate acts constitute violations of the applicable statutes. While Newport alleges that "[e]ach of the predicate acts alleged by Newport relates to Sears' plan to defraud Newport in connection with the development of the Newport Industrial Park," (Doc. 323, p. 22), the statutes require more.[4] At a minimum, the crimes of mail and wire fraud require that the communication be in furtherance of the scheme to defraud, and that the communication relate to material facts. Newport does not allege and the facts do not support the allegation that all of the acts listed were made in furtherance of the alleged scheme to defraud or related to a material fact.

As it pertains to Newport's allegations concerning enterprise, the Court refuses to find, as a matter of law, that a plaintiff cannot be deemed the enterprise under § 1962(c). However, Sears' arguments regarding the deficiency regarding its alleged association with the enterprise are well-taken. In this regard, Newport is alleging that "Sears was associated with Newport in connection with the plans for the development of the Newport Industrial Park ..." (Doc. 323, p. 22). In effect, Newport would place Sears in the position of conducting or participating in the conduct of Newport's affairs, or in any event so "associated" with Newport as to warrant application of the first of the three RICO tests.

The facts as pleaded and the undisputed facts established through discovery show that Sears was not associated with Newport as that term is commonly understood: "[j]oined in companionship, united in action or purpose, sharing in dignity or office, allied," 1 Oxford English Dictionary 718

---

**4.** 18 U.S.C. § 1341 provides in pertinent part: Whoever, having devised or intending to devise any scheme or artifice to defraud ... for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, ... shall be fined not more than $1,000.00 or imprisoned not more than five years, or both.

18 U.S.C. § 1343 provides in pertinent part: Whoever, having devised or intending to devise any scheme or artifice to defraud ... transmits or causes to be transmitted by means of wire ... in interstate commerce, any writings, signs, signals, pictures or sounds for the purpose of executing such scheme or artifice, shall be fined not more than $1,000.00 or imprisoned not more than five years, or both.

(2d ed. 1989), "closely connected, joined, or united with another (as in interest, function, activity or office)," Webster's Third New Int'l Dictionary 132 (1976). Here, it is undisputed that Sears and Newport signed a letter dated January 9, 1985. However, by the very terms of that letter, and even assuming it may have created contractual obligations of some sort, any contemplated association between the parties was in the future, after the preparation of mutually acceptable legal documentation. No matter how important it was for Newport to have Sears in its facility, it remained Newport's facility and Newport was solely responsible for its planning. During the times relevant to this claim, the parties were negotiating toward an association, no more and no less.

■ This lack of association again reveals itself in the related requirement of participation in the enterprise's affairs. "RICO criminalizes the *conduct of an enterprise* through a pattern of racketeering activity and not merely the defendant's engaging in racketeering activity." *Cauble*, 706 F.2d at 1331–1332 (emphasis added). In this regard,

> A defendant does not "conduct" or "participate" in the conduct of a lawful enterprise's affairs, unless (1) the defendant has in fact committed the racketeering acts as alleged; (2) *the defendant's position in the enterprise facilitated his commission of the racketeering acts;* and (3) the predicate acts had some effect on the lawful enterprise.

*Cauble*, 706 F.2d at 1332–1333 (emphasis added). See also: *United States v. Carlock*, 806 F.2d 535, 546 (5th Cir.1986), *cert. denied*, 480 U.S. 949, 950, 107 S.Ct. 1611, 1613, 94 L.Ed.2d 796, 798 (1987). Here, Newport ignores the second requirement enumerated hereinabove, and relies instead on the first and third element only. Newport does not allege and the facts do not support a finding that Sears occupied anything akin to a "position" in Newport, which is necessarily dependent on an un-

derlying association as that term is commonly understood.

Finally, it is clear that Newport's allegations regarding damages are woefully lacking. Civil actions are authorized under 18 U.S.C. § 1964(c): "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefore ..." The Supreme Court has held:

> '[a] defendant who violates section 1962 is not liable for treble damages to everyone he might have injured by other conduct' ... Any recoverable damages occurring by reason of a violation of § 1962(c) will flow from the commission of the predicate acts."

*Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 498, 105 S.Ct. 3275, 3286, 87 L.Ed.2d 346 (1985) (quoting *Haroco, Inc. v. American National Bank & Trust Co.*, 747 F.2d 384, 398 (7th Cir.1984), *aff'd*, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985)). The Fifth Circuit has interpreted this language to require the injury to be caused both factually (but for) and legally (proximately) by the predicate acts. *Ocean Energy II, Inc. v. Alexander & Alexander, Inc.*, 868 F.2d 740 (5th Cir.1989); *Zervas v. Faulkner*, 861 F.2d 823 (5th Cir.1988).

■ Newport has repeatedly refused to specify its damages throughout this litigation.[5] It is clear that it may recover only those damages factually and legally caused by the predicate acts of mail and wire fraud in this RICO claim, not those otherwise owing by virtue of an alleged breach of contract. Here, Newport seeks recovery of damages, not of those monies shown to have been expended as the result of the predicate acts, but of lump sum amounts based on the successful completion of the project, itemized as "out of pocket loss, lost public monies and lost profits." (Doc. 498, p. 9). In addition to a failure of proof regarding causation by virtue of the mail and wire fraud, the generalized damages sought by Newport are, at best, speculative

---

**5.** Newport's refusal to specify is not limited to the issue of damages, but extends to all allegations surrounding the issues of fraud presented in this matter, including those underlying its RICO claim, as discussed *infra*.

and based on assumed facts finding no support in the record.

■ Indeed, the Court fails to see evidence of even factual causation herein. In this regard, the relevant inquiry is whether the damages claimed by Newport were caused by Sears' alleged misrepresentations concerning its intent in occupying the facility upon development. See: *Ocean Energy II*, 868 F.2d 740, 747. In considering this issue, all of the undisputed facts, not just those hand-picked by Newport, are considered. Not only has Newport failed to suggest how the requisite causation can be inferred, but has continually and deliberately sought to avoid providing a coherent itemization of damages.

The record is replete with examples of undisputed facts which perhaps provide evidence of motivation for Newport's recalcitrance toward specificity. For example, it should be noted that Newport admits that it sent a document to Sears in September 1985 which called on Sears to *purchase* the property from Newport and finance its construction because Newport felt "[i]t's time we formalized our agreement." (Doc. 442, Exh. 15). In addition, Newport admits that it was informed, at least intermittently during the time in which the alleged predicate acts were performed, that Sears was not interested in additional warehouse space. (See e.g.: Doc. 448, pp. 28–36). Also, contrary to Newport's assertions, it has provided the Court with clear and unambiguous evidence of an April 1986 partnership agreement with a Florida concern and attendant funding in the amount of $23,500,-000.00 cash for the development of the Newport facility, which makes no reference to Sears' occupancy therein. (Doc. 448, Exh. 121). These examples are not unintended or isolated, nor limited to those allegations relating to damages.

Where a plaintiff claims fraudulent conduct by a defendant as a basis for its RICO claim, Fed.R.Civ.Pro. 9(b) requires that fraud be pleaded with specificity. The requirements set forth in Fed.R.Civ.Pro. 8(a) and 8(e)(1) that pleadings shall contain a "short and plain statement of the claim"

and "shall be simple, concise and direct" applies to allegations of fraud. *Old Time Enterprises v. Int'l Coffee Corp.*, 862 F.2d 1213, 1217 (5th Cir.1989). Here, not only are the pleadings deficient, but Newport has continually sought to obfuscate the facts surrounding their claims.

Throughout the strained history of this litigation, Newport's refusal to specify its claims of fraud, relevant here to the scheme to defraud underlying the mail and wire fraud predicates and the allegations of damages, also has been continuous and blatant. On the eve of trial after years of difficult discovery, Sears filed a motion to compel aimed at the discovery of the most rudimentary facts concerning the plaintiff's case, including those facts basic to the RICO claim. (Doc. 430). After being provided with literally hundreds of pages of responses, the Magistrate twice ordered Newport to revise its responses in a coherent and specific manner. (Doc. 446, 468). Again, over a hundred pages of answers and responses replete with cross-references were provided.[6]

■ The Magistrate sanctioned Newport by permitting Sears to brief the Court on the effect of Newport's responses by way of supplemental memorandum to this Court on its effect on the pending motions. (Doc. 483). The Court finds that Newport's disregard of orders and deliberate refusal to specify its claims and the facts upon which it relies is pure contumacy. Given the hundreds of Court hours devoted to routine pre-trial matters, at the very least, it reflects the futility of permitting amendment to either the complaint or the RICO case statement; at most, it warrants imposition of the more severe sanctions under Fed.R. Civ.Pro. 37(b), including dismissal with prejudice.

■ Newport initially claimed diversity as the basis of this Court's subject matter jurisdiction. Over two years later, by way of fourth amended complaint filed on October 5, 1988, Newport added a RICO claim and alternatively claimed federal question jurisdiction. The Court has recently been

---

**6.** Newport's responses to the Magistrate's order are hereby made part of the record.

advised by Newport that diversity does not exist between the parties, and that the complaint should be amended to reflect federal question jurisdiction as the basis for this Court's subject matter jurisdiction. (Doc. 503). *Carden v. Arkoma Associates,* — U.S. ——, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990).[7] Where federal claims are dismissed before trial, pendent state claims should be dismissed as well. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Wong v. Stripling,* 881 F.2d 200 (5th Cir. 1989).

Finally, the Court has considered Sears' memorandum as to jurisdiction, in which it argues that a Louisiana partnership in commendam should be treated as a corporation for jurisdictional purposes. However, the Supreme Court in *Carden* specifically commented that entities other than the Puerto Rican sociedad en comandita discussed in *Puerto Rico v. Russell & Co.,* 288 U.S. 476, 53 S.Ct. 447, 77 L.Ed. 903 (1933), would likely be treated as unincorporated groups for diversity purposes. *Carden,* 110 S.Ct. at 1018. The Court notes that the similarities shared by all limited partnerships was detailed by the dissent in *Carden,* and recognized by the majority when it simply stated that it had rejected applying *Russell* beyond its facts in *Steelworkers v. R.H. Bouligny,* 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965). *Carden,* 110 S.Ct. at 1019, fn 2.[8] The Court has been provided with no good reason to apply *Russell* to the facts herein.

Accordingly,

IT IS ORDERED that the motion to dismiss filed by Sears, Roebuck & Company, treated in part as a motion to dismiss, is hereby GRANTED as to the claim brought under 18 U.S.C. § 1962(c), and the pendent

state law claims are DISMISSED. Judgment shall be entered accordingly.

---

**7.** The Court notes that Newport failed to properly allege diversity jurisdiction even under Fifth Circuit precedent requiring reference to citizenship of general partners, which was reversed by the Supreme Court in *Carden, supra,* despite being ordered to amend its jurisdictional statement. (Docs. 1, 176, 177).

**8.** The Court parenthetically notes that Louisiana, while enjoying a civilian tradition, is one of the United States. The fact that a Louisiana

partnership in commendam derives from a civilian code provides no reason for treatment different from other American limited partnerships. In addition, to otherwise construe "American-but Louisianian" limited partnerships as incorporated entities could have far-reaching implications, such as subjecting such entities to that system of federal income taxation imposed upon corporations.