Billy R. WHALEN, Plaintiff–Appellant,

v.

Prentiss H. CARTER, Jr., et al.,
Defendants–Appellees.

Claude SHARKEY, Plaintiff–Appellant,

v.

The BANK OF GREENSBURG, et al., Defendants–Appellees.

John FUSSELL, Plaintiff–Appellant,

v.

The BANK OF GREENSBURG, et al., Defendants–Appellees.

No. 90–3865.

United States Court of Appeals,
Fifth Circuit.

March 5, 1992.

1088

Jonathan R. Schmidt, Hammond, La., for Billy R. Whalen and Claude Charkey.

G. Daniel Evans, Birmingham, Ala., Peter F. Burns, Mobile, Ala., for Billy R. Whalen.

Rykert O. Toledano, Jr., Covington, La., for John Fussell.

Randy P. Zinna, Reynolds & Zinna, Baton Rouge, La., for P. Carter and W. Carter.

A.S. Easterly, III, Easterly & Pittman, Denham Springs, La., for R. Carter and B. Koger.

William C. Kaufman, III, Seale, Smith, Zuber & Barnette, Baton Rouge, La., for W. Hugh Sibley.

Frederick R. Tulley, Tom F. Phillips, Taylor, Porter, Brooks & Phillips, Baton Rouge, La., for Bank of Greenburg.

Holly C. Rolfes, New Orleans, La., for Meyers.

Before POLITZ, Chief Judge, KING and JOHNSON, Circuit Judges.

JOHNSON, Circuit Judge:

The plaintiffs in these consolidated cases brought assorted federal and state law causes of action against multiple defendants. Essentially, the plaintiffs claimed that the defendants conspired to defraud them. After two hearings, the district court granted summary judgment against the plaintiffs and dismissed their claims. This Court affirms in part, reverses in part and remands for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiffs Billy R. Whalen, Claude Sharkey and John Fussell filed three separate civil lawsuits against the defendants under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968 (1988). The federal district court consolidated these cases, each of which arose out of a common series of allegedly fraudulent transactions between The Bank of Greensburg ("the Bank"), Carter Mobile Homes, Inc. ("CMH"), a Louisiana corporation, and Prentiss H. Carter, Jr. and Associates ("PHC & Associates"), a real estate partnership in commendam. At the time of the lawsuits, the plaintiffs were shareholders in CMH and owned debentures that CMH had issued. Moreover, the plaintiffs were partners in PHC & Associates. Besides the entities involved in the fraudulent transactions, the plaintiffs also sued the following individuals: Henry Ben Myers, president of The Bank of Greensburg; Prentiss H. Carter, Jr., CMH president and limited partner in PHC & Associates; William F. Carter, CMH secretary and limited partner in PHC & Associates; Hugh Sibley, the defendants' attorney; Betty Joe Carter Koger; and Rebecca Carter.

In their complaints, the plaintiffs alleged that Prentiss and William Carter mortgaged assets of the partnership, PHC & Associates, to secure a loan from the Bank to CMH. They claim that Prentiss and William Carter, Henry Myers and Hugh Sibley conspired to use a portion of the loan proceeds to retire debentures held by Carter family members—Betty Koger and Rebecca Carter—in preference over the plaintiffs, who likewise held CMH debentures. Allegedly, the conspirators completed these preferential transfers shortly before CMH went into bankruptcy. As a

result of these preferential transfers, the plaintiffs complain that they have suffered a decrease in the value of their investments. They seek treble damages under RICO for the diminution in the value of their equity interest in PHC & Associates and the loss in value of their CMH debentures and stock. In addition, plaintiff Whalen individually seeks damages from the defendants under a series of federal securities statutes and Louisiana tort theories.

On July 21, 1989, the Bank filed a Rule 12(b)(6) motion alleging that the plaintiffs did not have the requisite standing to bring a RICO claim. At the hearing on this motion, the judge announced that, in his opinion, if the plaintiffs did not have standing to bring a RICO claim against the Bank, then the plaintiffs also did not have standing to bring a RICO claim against the other defendants. Subsequently, the remaining defendants adopted the Rule 12(b)(6) motion pending before the district court. The court stayed all discovery until it could rule on this motion.

Shortly thereafter, on March 15, 1990, the district court ruled that the plaintiffs *as shareholders and creditors* of CMH lacked standing to assert a RICO claim against the defendants. The court also ruled that the plaintiffs *as limited partners* in PHC & Associates lacked standing to assert a RICO claim against any of the defendants who were not partners in PHC & Associates. Thus, under this ruling, the plaintiffs could assert a RICO claim against Prentiss and William Carter—each of whom were partners in PHC & Associates—but could not assert a RICO claim against any other defendant. Interestingly, while the district court permitted the plaintiffs to proceed against Prentiss and William Carter, the court refused to permit the plaintiffs to reopen discovery.

Because the court's March 15 ruling did not address plaintiff Whalen's federal securities and state tort claims, the court scheduled a status conference to determine whether these claims could proceed to trial. At the conference, the court ordered Whalen to file a statement describing the facts of each claim with greater specificity. Whalen filed this statement in late April 1990. Defendant Hugh Sibley then filed a motion to dismiss the non-RICO claims asserted against him. In June, at a hearing on the motion to dismiss, the district court ordered that Sibley convert his motion to dismiss into a motion for summary judgment and that the other defendants file motions for summary judgment.

Two months later, the court granted summary judgment in favor of the defendants, dismissing Whalen's federal securities claims with prejudice and his state law claims without prejudice. As to the federal claims, the court reasoned that Whalen had failed to allege facts sufficient to raise a claim of securities fraud; as to the state claims, the court reasoned that it lacked subject matter jurisdiction to adjudicate the claims. The court placed the plaintiffs' remaining RICO claims against Prentiss and William Carter on its administrative docket, and by later agreement of the parties, these claims were closed. On October 31, 1990, the district court entered a final judgment.

## II. DISCUSSION

In this appeal, we must address four issues: (1) whether the plaintiffs had standing to sue the defendants under RICO; (2) whether the district court could exercise subject matter jurisdiction over Whalen's state law claims; (3) whether plaintiff Whalen alleged facts sufficient to raise a federal securities fraud claim; and (4) whether the district court correctly denied the plaintiffs' requests to reopen discovery.

### A. Standing to Sue Under Civil RICO

The civil RICO statute itself does not impose much of a standing requirement upon plaintiffs in RICO actions: it merely provides that RICO plaintiffs must have been injured "by reason of" a predicate act or acts which constitute a violation of RICO section 1962. 18 U.S.C. § 1964(c). *See Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). This RICO standing provision seems to require, as a condition

to a civil RICO action, that there be some nexus between the predicate acts and the subsequent injury. Interpreting this provision, the Fifth Circuit has concluded that the requisite nexus between predicate acts and subsequent injury is a causal relation. Under this interpretation of the RICO statute, a plaintiff has statutory standing to bring a claim as long as the defendants' predicate acts constitute both a factual and proximate cause of the plaintiff's alleged injury. *See Old Time Enterprises, Inc. v. International Coffee Corp.*, 862 F.2d 1213, 1218 (5th Cir.1989); *Zervas v. Faulkner*, 861 F.2d 823, 834 (5th Cir.1988).[1]

Nonetheless, while causation is the crux of the statutory standing requirement, the RICO standing analysis does not end with a simple finding that there is a causal relation between predicate acts and the subsequent injury. A plaintiff in a RICO action must also demonstrate that he meets all applicable standing requirements imposed in other pertinent federal and state laws. *Ocean Energy II, Inc. v. Alexander & Alexander, Inc.*, 868 F.2d 740, 744 (5th Cir.1989). Even though these other standing requirements may have no relation to RICO or its regulatory scheme, they must be satisfied in addition to the statutory standing requirements. *Id.* Therefore, in determining whether a plaintiff has standing to assert RICO claims, the district court first must determine whether any non-RICO standing requirements apply and have been satisfied. Then the court must determine whether the plaintiff has demonstrated that he has suffered an injury "by reason of" predicate acts which constitute a violation of RICO section 1962. *Id.* at 746.

It is unclear in the instant case whether the plaintiffs themselves were injured "by reason of" predicate acts that constitute a RICO violation. The district court never reached the second part of the RICO standing test, however, because it concluded that the plaintiffs failed to satisfy applicable non-RICO standing requirements. We will analyze the applicability of these non-RICO standing requirements in each of the plaintiffs' legal capacities: as shareholders in a corporation, as creditors of a bankrupt corporation, and as limited partners in a partnership.

### 1. *Shareholders*

The plaintiffs asserted a RICO claim against the defendants for the loss in value of their CMH stock and debentures. Shareholder suits like this one are subject to standing requirements derived from the state laws that govern such actions. *Leach v. FDIC*, 860 F.2d 1266, 1274 (5th Cir.1988), *cert. denied*, 491 U.S. 905, 109 S.Ct. 3186, 105 L.Ed.2d 695 (1989). In *Leach*, for example, the plaintiffs were minority shareholders who brought a RICO claim against the directors of their corporation, alleging that the directors had misrepresented the financial condition of the corporation in several annual reports. The *Leach* Court affirmed the dismissal of the claim because, under Texas law, a shareholder does not have a right of action against a director who has mismanaged the affairs of the corporation. *Id.*

■ In determining whether shareholders have standing to bring a RICO suit for the loss in value of their shares, this Court must ask three questions: (1) whether the racketeering activity was directed against the corporation; (2) whether the alleged injury to the shareholders merely derived from, and thus was not distinct from, the injury to the corporation; and (3) whether state law provides that the sole cause of action accrues in the corporation. *Ocean Energy II*, 868 F.2d at 744; *Leach*, 860 F.2d at 1273–74; *Crocker v. FDIC*, 826 F.2d 347, 349 (5th Cir.1987), *cert. denied*, 485 U.S. 905, 108 S.Ct. 1075, 99 L.Ed.2d 235 (1988). If each of these questions can be answered "yes," then the shareholders do not have the requisite standing.

---

1. Other circuits have reached a different conclusion. The Second Circuit, for instance, has held that the "by reason of" language in the civil RICO standing provision requires only a factual causation nexus. *Bankers Trust Corp. v. Rhoades*, 859 F.2d 1096, 1101 (2d Cir.1988), *cert. denied*, 490 U.S. 1007, 109 S.Ct. 1643, 104 L.Ed.2d 158 (1989).

■ As to the first of these questions, there is little doubt that the racketeering activity in the instant case, if any, was directed against CMH and not the plaintiffs. The alleged fraudulent transfer of loan proceeds was an act intended to deflate the value of the CMH corporate entity. There is no evidence that the defendants committed any fraudulent acts with the *direct* intent to injure the plaintiffs.[2] Moreover, as to the second of the questions in the three part analysis, the record clearly indicates that the plaintiffs' injuries are indistinct from the injury to the corporation. The plaintiffs do not allege that they have suffered any tangible injuries. Rather, they complain that they have suffered intangible injuries: that is, they allege that, as a result of the fraudulent transfers, their debentures have become uncollectible and their stock has become worthless. These injuries are nothing more than a different manifestation of the same injury that the corporation suffered in the fraudulent transfer of its assets. *See Empire Life Ins. Co. v. Valdak Corp.*, 468 F.2d 330, 335 (5th Cir.1972).[3]

■ The remaining question is whether Louisiana law affords the plaintiffs a private right of action. We conclude that it does not. Under Louisiana law, damage claims predicated upon the depletion of corporate assets belong to the entity, not to individual investors. *Beyer v. F & R Oilfield Contractors, Inc.*, 407 So.2d 15, 16 (La.App.1981), *writ denied*, 411 So.2d 451 (La.1982). Minority shareholders, therefore, do not have a right of action against the officers and directors of their corporation for the devaluation of corporate shares. *Id.* at 17 ("a right to recover loss for mismanagement or fraud may only be asserted secondarily by a shareholder through a shareholder's derivative suit."). *See also Landry v. All American Assurance Co.*, 688 F.2d 381, 391 (5th Cir.1982). Neither do minority shareholders have a right of action against third party defendants who might have injured the corporation. *Schaffer v. Universal Rundle Corp.*, 397 F.2d 893, 896 (5th Cir.1968) (interpreting Louisiana law). Because the plaintiffs' alleged injuries derived from injuries to CMH and Louisiana law provides that the sole cause of action for corporate injuries accrues to the corporation, the district court did not err in finding that the plaintiffs, in their capacities as shareholders in CMH, lacked standing to assert a direct claim under RICO.

### 2. Creditors Against a Bankrupt Corporation

■ The plaintiffs contend that, even if they do not have the requisite standing in their capacities as shareholders in CMH, they have the standing to bring a RICO claim against the defendants in their capacities as creditors of the corporation. Before their claim was filed, however, CMH had filed a petition for bankruptcy. This Court ruled in *Ocean Energy II* that "only the trustee in bankruptcy has standing to bring a RICO claim for monies owed to the bankruptcy estate." 868 F.2d at 746. Be-

**2.** The complaint alleges that Prentiss Carter made false statements to the plaintiffs in an effort to obtain money from them. If true, these false statements would constitute a wrongful act directed toward the plaintiffs, rather than the corporation. *Cf. Wilson v. H.J. Wilson Co.*, 430 So.2d 1227, 1234 (La.App.1983) (where breach of fiduciary duty causes personal loss, distinct from the corporation, the "shareholder may sue individually to recover his loss."). The plaintiffs do not indicate in their complaint, however, whether they actually paid Prentiss Carter money in reliance upon his misrepresentations. Consequently, it is impossible to tell whether these misrepresentations actually injured the plaintiffs.

We need not determine here whether Prentiss Carter made false statements to the plaintiffs.

Because we find that the plaintiffs have standing to sue Prentiss Carter in their capacity as limited partners, *see infra* 1093–94, we conclude that the plaintiffs are not prejudiced by a finding that they do not have standing to sue in their capacity as stockholders.

**3.** One reason that the plaintiffs do not have standing as stockholders to sue the defendants is that they have only suffered "indirect" injuries. While the civil RICO standing provision does not necessarily require that the plaintiffs suffer a direct injury, *see Zervas*, 861 F.2d at 833, state law standing guidelines can create "a direct/indirect injury dichotomy in which only direct injuries are compensable under RICO." *Ocean Energy II*, 868 F.2d at 744.

cause the plaintiffs' claim essentially seeks damages for the fraudulent transfer of assets that belong in the bankruptcy estate of CMH, the district court did not err in finding that the plaintiffs lacked standing to assert RICO claims in their capacities as creditors.

### 3. Limited Partners

■ In addition to their standing arguments in other capacities, the plaintiffs finally contend that they have standing to pursue a RICO claim in their capacities as limited partners in PHC & Associates.[4] The standing analysis used to determine when a shareholder may bring a RICO action for injuries to a corporation serves "as a guide in determining RICO standing in closely related situations." *Ocean Energy II*, 868 F.2d at 745. We conclude, as did the district court, that the three part standing analysis in the shareholder suit context also applies to the RICO claims of limited partners for alleged injuries to a partnership. In this case, it is evident that the defendants' racketeering activity was directed against the partnership, PHC & Associates, and that the plaintiffs' injuries derived from injuries to the partnership. Therefore, the sole remaining question is whether Louisiana law affords the plaintiffs a private action in their role as limited partners.

■ In Louisiana, a partnership is a legal entity distinct from the partners who compose it. *See* La.Code Civ.Proc.Ann. art. 688 (West 1960 & Supp. 1991); *see also State v. Morales*, 256 La. 940, 240 So.2d 714, 716 (1970); *Trappey v. Lumbermen's*

*Mut. Cas. Co.*, 229 La. 632, 86 So.2d 515, 516–17 (1956). Accordingly, a Louisiana jurisprudential rule holds that as long as a partnership exists and has not been dissolved or liquidated, the partnership itself is the proper party to maintain an action for damages to the partnership. *Dalby v. United States Fidelity & Guaranty Co.*, 365 So.2d 568, 570 (La.App.1978). "A partner cannot, in his individual capacity, bring suit to recover a debt or damages owed to the partnership." *Davis v. Pioneer Bank Trust Co.*, 272 So.2d 430, 434 (La.App. 1973).

■ In recent years, however, the Louisiana courts have recognized several exceptions to the jurisprudential rule against suits by a partner in his individual capacity.[5] One of these exceptions is relevant here: when the injury to the partnership is caused *by a partner*, the disaffected partners can sue the partner that caused the injury. In *Dupuis v. The Becnel Co.*, 535 So.2d 375 (La.1988), for instance, the Supreme Court of Louisiana permitted the plaintiffs—limited partners in a partnership in commendam—to bring suit against fellow partners who committed fraudulent acts against the partnership. The supreme court ruled that if a limited partner violates his fiduciary duties to the partnership, the remaining partners can bring an action to recover damages and lost profits. *Id.* at 378 (citing Comment, *An Examination of Louisiana Limited Partnership—the Partnership in Commendam*, 55 Tulane L.Rev. 515, 534 (1981)).[6] Like the plaintiffs in *Dupuis*, the plaintiffs in the instant case

---

4. PHC & Associates is a "partnership in commendam." The Louisiana partnership in commendam is modeled upon the French société en commandite, which in turn corresponds with the limited partnership in Anglo–American jurisprudence. *Dupuis v. The Becnel Co.*, 535 So.2d 375, 376 (La.1988).

5. As just a few examples of cases which have refused to apply this jurisprudential rule, see *Ingersoll Corp. v. Rogers*, 217 La. 79, 46 So.2d 45 (1950) (jurisprudential rule does not apply when liability arises out of an independent transaction); *Douglas v. Thomas*, 489 So.2d 449 (La. App.1986) (jurisprudential rule does not apply when the obligation that forms the basis of the

suit is governed by a private agreement); *Brouillette v. Phoenix Assurance Co.*, 340 So.2d 667 (La.App.1976) (jurisprudential rule does not apply when the suit sounds in tort).

6. Some language in *Dupuis* suggests that the Supreme Court of Louisiana may have completely eliminated the jurisprudential rule forbidding suits by a partner to recover debts owed to the partnership. 535 So.2d at 378 ("the jurisprudential rule has no civilian or statutory underpinnings and must fall."). Because we conclude that at the least *Dupuis* establishes an applicable exception to the jurisprudential rule, we do not determine whether the rule survives in circumstances not presented here.

complain that their fellow partners have mismanaged the partnership and committed fraud against it. The district court did not err in concluding that the plaintiffs, as limited partners, have standing to assert RICO claims against Prentiss and William Carter.

■ But contrary to the district court's ruling, the plaintiffs' standing to assert RICO claims does not end with Prentiss and William Carter. It also extends to non-partner third party defendants. As noted in *Dupuis,* "when fraud is alleged and the defendant partner [has] benefitted from or participated in the fraud," Louisiana law permits a plaintiff partner to bring a private action. *Dupuis,* 535 So.2d at 377 (citing *Dohm v. O'Keefe,* 458 So.2d 964 (La. App.), *writ denied,* 460 So.2d 1046 (La. 1984)). The Louisiana courts have held that, in such a private action, the plaintiff may join as defendants any individuals or entities who assisted the defendant partner in defrauding the partnership. *See Dohm,* 458 So.2d at 965; *Jefferson Business Serv., Inc. v. Olivetti Corp.,* 393 So.2d 880, 882 (La.App.1981). "[A]ll persons who participated in the alleged fraud and those who are its beneficiaries are proper parties to the suit." *Dohm,* 458 So.2d at 965. *Cf.* La.Civ.Code Ann. art. 2324(A) (West Supp. 1991) ("He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act.").

The plaintiffs in this case allege that non-partner third party defendants (1) assisted Prentiss and William Carter in violating their fiduciary duties to the partnership and (2) conspired with Prentiss and William Carter in a scheme to defraud PHC & Associates. The plaintiffs argue that the denial of standing to sue these third party defendants would create the anomalous result that some wrongdoers could be sued while others who joined in the conspiracy and assisted in the fraudulent scheme would be protected. We agree, and we conclude that Louisiana law does not countenance such a result. The district court erred in holding that Louisiana law does not provide the plaintiffs a private action against non-partner third party defendants.

The plaintiffs, in their capacities as limited partners in PHC & Associates, have met the non-RICO standing requirements as to their claims against Prentiss H. Carter, Jr., William F. Carter, and the defendants who are alleged co-conspirators in the racketeering activities surrounding the operation of PHC & Associates. On remand, the district court must determine whether the plaintiffs have also met the statutory RICO standing requirements—that is, whether the plaintiffs suffered their injuries "by reason of" the commission of predicate acts which constitute a violation of RICO section 1962. In making this determination, the district court is cautioned that the plaintiffs need not *prove* factual causation at this stage in the proceedings, but rather need "only meet the burden of proof necessary to oppose [the] appellees' summary judgment motions." *Ocean Energy II,* 868 F.2d at 747.

### B. Subject Matter Jurisdiction

#### 1. *Citizenship of a Partnership—Carden v. Arkoma Associates*

■ Besides his federal RICO claims, plaintiff Whalen asserted several state law claims against the defendants, including breach of fiduciary duty, conspiracy, fraudulent misrepresentation and conflict of interest. Whalen claims that the district court could exercise subject matter jurisdiction over these state law claims under the federal diversity statute, which provides that the district courts have original jurisdiction over all civil actions where the matter in controversy exceeds $50,000 and is between citizens of different states. 28 U.S.C. § 1332 (Supp.1989). The diversity statute requires "complete diversity" of citizenship: a district court cannot exercise diversity jurisdiction if one of the plaintiffs shares the same state citizenship as one of the defendants. *Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806); *Mas v. Perry,* 489 F.2d 1396, 1398–99 (5th Cir.1974), *cert. denied,* 419 U.S. 842, 95 S.Ct. 74, 42 L.Ed.2d 70 (1975).

Plaintiff Whalen is a citizen of Alabama. He contends that his citizenship is diverse from that of every named defendant, including the partnership in commendam, PHC & Associates. We disagree. While Whalen is correct that most of the defendants are citizens of Louisiana, PHC & Associates is a citizen of both Louisiana and Alabama, and thus shares the same citizenship as Whalen. The controlling decision is *Carden v. Arkoma Associates,* 494 U.S. 185, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990), which clarifies the method for determining the citizenship of a limited partnership. In *Carden,* the Supreme Court ruled that, for diversity purposes, a limited partnership is a citizen of each state in which its partners—both general and limited—hold citizenship. 110 S.Ct. at 1021. The *Carden* citizenship rule for limited partnerships applies to Louisiana partnerships in commendam. *Newport Ltd. v. Sears, Roebuck & Co.,* 941 F.2d 302, 307 (5th Cir.1991).[7] Because Whalen is a limited partner in PHC & Associates, the partnership is considered a citizen of Alabama.

Whalen argues that *Carden* is distinguishable because the plaintiff in *Carden* was not a member of the defendant partnership. He urges this Court to carve out an exception to the *Carden* rule, complaining that if partnerships are *always* to be considered citizens of the same states in which their partners are citizens, then partners could never assert diversity jurisdiction in a suit against the partnership. While this argument might have some logical appeal, the federal appellate courts have refused to recognize an exception to the *Carden* rule. *See Buckley v. Control Data Corp.,* 923 F.2d 96, 97 (8th Cir.1991) (holding that there is no diversity of citizenship where limited partners bring action against the limited partnership as an entity); *Curley v. Brignoli, Curley & Roberts Associates,* 915 F.2d 81, 84 (2d Cir.1990) (same), *cert. denied,* —— U.S. ——, 111 S.Ct. 1430, 113 L.Ed.2d 484 (1991). We likewise refuse to recognize such an exception. The opinion in *Carden* is clear: diversity jurisdiction in *any* suit "by or against" a limited partnership depends on the citizenship of *all* its partners. *Carden,* 110 S.Ct. at 1021.

2. *Subsequent Joinder of a Partnership—FreePort McMoRan, Inc. v. K N Energy, Inc.*

Citing *FreePort McMoRan, Inc. v. K N Energy, Inc.,* —— U.S. ——, 111 S.Ct. 858, 112 L.Ed.2d 951 (1991), Whalen argues that, even if PHC & Associates is considered a citizen of the state of Alabama, its presence in the lawsuit does not destroy diversity jurisdiction because PHC & Associates was added as a defendant after the suit was filed. In *FreePort McMoRan,* the plaintiff sued the defendant in federal court for breach of contract, basing federal jurisdiction upon diversity of citizenship. Subsequently, the plaintiff added a limited partnership as another plaintiff. Since the partnership shared the same citizenship as the defendant, the court of appeals directed that the district court dismiss the action for want of jurisdiction. The Supreme Court reversed, noting that "if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events." 111 S.Ct. at 860. Nothing in *Carden,* according to the Court in *FreePort McMoRan,* changes the well established rule that diversity jurisdiction is assessed at the time an action is filed. *Id.*

---

**7.** The Supreme Court in *Carden* refused to overrule *Puerto Rico v. Russell & Co.,* 288 U.S. 476, 53 S.Ct. 447, 77 L.Ed. 903 (1933), which held that an entity known as a *sociedad en comandita,* created under the civil law of Puerto Rico, could be treated solely as a citizen of Puerto Rico, regardless whether its members held citizenship in jurisdictions other than Puerto Rico. *Id.* at 482, 53 S.Ct. at 449. But even though the Louisiana partnership in commendam likewise was created under civil law, it bears little resemblance to the Puerto Rican *sociedad en coman-*

*dita.* Rather, the partnership in commendam is comparable to a common law limited partnership, much like the partnership in *Carden. See supra* note 4. Thus, the Fifth Circuit has ruled that the *Carden* rule applies to Louisiana partnerships in commendam. *Newport Ltd. v. Sears, Roebuck & Co.,* 941 F.2d 302, 307 (5th Cir.1991) ("*Carden* does not admit of a partnership in commendam exception to the rule that limited partnerships are to be treated for diversity purposes no differently than ordinary partnerships.").

Nonetheless, while the Court in *FreePort McMoRan* could not conclude that *Carden* was an exception to the rule that jurisdiction is assessed at the time an action is filed, the Court did acknowledge at least one exception to the rule. The Court observed that if a limited partnership was an *indispensable* party at the time the action was filed, the citizenship of the limited partnership is an appropriate factor in the "complete diversity" calculus even though the partnership was added as a party after the action was filed. *Id.* In other words, the Court in *FreePort McMoRan* concluded that the addition of a nondiverse party does not defeat diversity jurisdiction unless the party was indispensable at the time the plaintiff filed its complaint. *Id.*

In the instant case, Whalen's citizenship is diverse from the citizenship of every defendant except PHC & Associates. Thus, if PHC & Associates is not an indispensable party, the district court erred in refusing to exercise subject matter jurisdiction over Whalen's state law claims. Conversely, if PHC & Associates is an indispensable party, then the district court did not err in dismissing the state law claims for want of diversity jurisdiction. Under the facts of this case, we conclude that PHC & Associates is indeed an indispensable party.

Under Federal Rule of Civil Procedure 19(b), a party is regarded as "indispensable" if a court cannot proceed without the party "in equity and good conscience." Fed.R.Civ.P. 19(b). Rule 19(b) offers four factors that a court can consider in determining whether a party is indispensable: (1) to what extent a judgment rendered in the party's absence might be prejudicial to that party or others in the lawsuit; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the party's absence will be adequate; and (4) whether the plaintiff will have an adequate remedy if the party cannot be joined. *Id.* These factors are not rigid tests, but rather are guides to the overarching "equity and good conscience" determination. *Wichita and Affiliated Tribes of Oklahoma v. Hodel*, 788 F.2d 765, 774 (D.C.Cir.1986). "Pragmatic and equitable considerations control the Rule 19(b) analysis." *Lone Star Indus., Inc. v. Redwine*, 757 F.2d 1544, 1552 (5th Cir. 1985).

When applied in the instant case, the balance of the four Rule 19(b) factors indicates that the district court cannot resolve Whalen's state law claims in equity and good conscience without the joinder of PHC & Associates. Under Louisiana law, the legal rights of a partnership in commendam are distinct from the rights of its partners. *See* La.Code Civ.Proc.Ann. art. 688 (West 1960 & Supp.1991). Although a limited partner in a Louisiana partnership in commendam can in some cases bring a suit in his individual capacity to recover for the loss of partnership assets, *see Dupuis*, 535 So.2d at 377, the basis for such a suit rests in the injury to the corporation, not the indirect injury to the partner. Thus, as an entity, a partnership in commendam has a strong interest in insuring that it can protect against the depletion of its assets and, where necessary, in recovering those assets after they have been depleted. *See* La.Code Civ.Proc.Ann. art. 737 (West 1960 & Supp.1991) (requiring the joinder of the partnership in all suits involving partnership obligations); *see also Harrison v. Frye*, 46 So.2d 382, 383 (La.App.1950) (the partnership "is the proper party defendant against whom all actions to impose rights against the partnership must be brought").[8] The absence of PHC & Associates from the instant action would prejudice its ability to protect this interest. Protective provisions in the judgment or other forms of shaped relief would be unlikely to

---

**8.** While the indispensability of a party is a question of federal law, a federal court can look to state law to determine the relative interest that the party has in the litigation. *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 124 n. 22, 88 S.Ct. 733, 746 n. 22, 19 L.Ed.2d 936 (1968); *Buckley*, 923 F.2d at 98; *Lone Star Indus., Inc.*, 757 F.2d at 1548 n. 3. Accordingly, we will look to Louisiana law to determine the interest that PHC & Associates has in this case.

lessen or avoid the prejudice. *Cf. Buckley,* 923 F.2d at 98 (limited partnership is indispensable party where the injury that forms the basis of the suit is directly suffered by the partnership and only indirectly suffered by the partners).

We recognize that plaintiff Whalen might not be able to obtain an adequate remedy in an alternate forum if his state law claims are dismissed in federal court for want of subject matter jurisdiction—the applicable limitations period probably has expired since the institution of his lawsuit in federal court. *Cf. Virginia Elec. & Power Co. v. Westinghouse Elec. Corp.,* 485 F.2d 78, 86 n. 22 (4th Cir.1973) (remedy may be inadequate if statute of limitations would bar commencement of suit in another forum), *cert. denied,* 415 U.S. 935, 94 S.Ct. 1450, 39 L.Ed.2d 493 (1974). Under the circumstances of this case, though, we are unable to conclude that the possibility Whalen might not obtain an adequate remedy outweighs the interest of the partnership in asserting and protecting its legal rights.[9] PHC & Associates is an indispensable party to this litigation, and its presence in the litigation destroys complete diversity.

Accordingly, the district court did not err in concluding that it was unable to exercise diversity jurisdiction over Whalen's state law claims. However, because we have concluded that Whalen might have the requisite standing to assert his RICO claims, we note that there is at least some possibility Whalen could assert his state law claims under 28 U.S.C. § 1367(a), which provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a) (Supp.1991).[10] Neither Whalen nor the defendants have briefed the issue whether the district court can exercise supplemental jurisdiction here. We conclude that the district court itself should have the opportunity to address this issue before we attempt to resolve it. Thus, we vacate the dismissal of Whalen's state law claims and remand with instructions that the district court consider whether it can exercise supplemental jurisdiction over these claims.

### C. Federal Securities Claims

In addition to his state law claims, plaintiff Whalen also alleged that the defendants committed various acts of securities fraud in violation of the 1933 and 1934 Securities Acts. Whalen apparently contends that the defendants violated section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l*(2), and section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), but he did not specify these sections in his complaint. Indeed, Whalen did not specify much in the way of either law or facts to support his securities fraud claims. Consequently, the district court granted summary judgment in favor of the defendants and dismissed these securities claims with prejudice.

■■■■■ This Court has ruled that the requirements in Federal Rule of Civil Procedure 9(b) apply to securities fraud claims. *Smith v. Ayres,* 845 F.2d 1360, 1365 (5th Cir.1988). Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall

---

**9.** We might be more reluctant to reach this conclusion if it were absolutely clear that plaintiff Whalen cannot assert his state law claims in federal court. But as we recognize *supra,* while the diversity statute does not support the exercise of subject matter jurisdiction over Whalen's state law claims, the district court might be able to assert supplemental jurisdiction over these claims.

**10.** Under the rule that prevailed prior to 1990, the federal district courts could exercise "pendent jurisdiction" over state claims arising from the same nucleus of operative fact as federal claims that confer subject matter jurisdiction. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Effective December 1, 1990, Congress enacted legislation—now codified in 28 U.S.C. § 1367—that supersedes the common law pendent jurisdiction doctrine. It is unclear whether this legislation merely codifies the pendent jurisdiction doctrine or actually changes the doctrine in some fashion.

be stated with particularity." Fed.R.Civ.P. 9(b). Whalen's complaint does not meet the requirements of Rule 9(b). It does not describe the circumstances in this case that constitute securities fraud. Nor does it allege facts that would establish each element of a securities fraud claim.

 Conclusory allegations of securities fraud are insufficient to avoid dismissal. *Smith*, 845 F.2d at 1365. Because his complaint contains nothing more than conclusory allegations of securities fraud, Whalen has failed to state a claim upon which the district court could grant relief. The failure to state a claim usually warrants dismissal under Rule 12(b)(6). *See* Fed.R.Civ.P. 12(b)(6). However, in many cases, the failure to state a claim is the "functional equivalent" of the failure to raise a genuine issue of material fact. *Blum v. Morgan Guaranty Trust Co.*, 709 F.2d 1463, 1466 (11th Cir.1983). Such is the case here. The district court did not err in granting summary judgment to the defendants on Whalen's federal securities claims.

D. Denial of Discovery

The plaintiffs complain that the district court denied them an opportunity to conduct reasonable discovery in this case. "[C]ontrol of discovery is committed to the sound discretion of the trial court and its discovery rulings will be reversed only where they are arbitrary or clearly unreasonable." *Williamson v. United States Dep't of Agriculture*, 815 F.2d 368, 382 (5th Cir.1987). After a careful review of the record, we are persuaded that the district court's discovery rulings were neither arbitrary nor clearly unreasonable.[11]

III. CONCLUSION

While the plaintiffs do not have the requisite standing to pursue RICO claims

against the defendants as creditors and shareholders of Carter Mobile Homes, Inc., the plaintiffs may have standing to pursue RICO claims as limited partners in PHC & Associates. They have established that non-RICO standing requirements do not preclude their claims against the defendants. Accordingly, the district court erred in dismissing the plaintiffs' RICO claims without considering whether statutory RICO standing requirements bar their claims. The district court did not err, however, in concluding that it could not exercise diversity jurisdiction over plaintiff Whalen's state law claims and in granting summary judgment to the defendants on Whalen's federal securities fraud claims. The judgment of the district court is affirmed in part and reversed in part, and this case is remanded to the district court for further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

---

11. We conclude merely that the district court did not abuse its discretion, *at the time it entered its decision,* in denying the plaintiffs' motions to reopen discovery. Our conclusion does not prevent the plaintiffs from reasserting their motions on remand. We express no opinion whether the district court would abuse its discretion in again denying the motions to reopen

discovery, but we recognize that if the district court determines the plaintiffs have statutory standing to assert their RICO claims, the court would abuse its discretion in refusing to permit the plaintiffs an adequate opportunity to discover information that would be relevant at trial.