# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 09-30984

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 11, 2010

Lyle W. Cayce
Clerk

PATRICK JOFFROIN; PHILLIP HEBERT; MICKEY O'CONNOR; DANNY KEATING; BETTIE KEATING; ET AL,

Plaintiffs–Appellants

v.

JOSEPH S. TUFARO; TROY DUHON; JEFFREY J. NEUPORT; CLIPPER LAND HOLDINGS, L.L.C.; CLIPPER CONSTRUCTION, L.L.C.,

Defendants–Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana

Before REAVLEY, PRADO, and OWEN, Circuit Judges.

PRADO, Circuit Judge:

Patrick Joffroin and forty-eight other homeowners ("Appellants") in the Clipper Estates subdivision in Slidell, Louisiana appeal the district court's dismissal of their lawsuit for lack of standing. Appellants are members of the Clipper Estates Master Homeowners Association ("CEMHOA"), and filed this lawsuit against the developers of the Clipper Estates subdivision ("Appellees"), alleging violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–68 ("RICO"). Appellants alleged that Appellees, through their

control of the CEMHOA, neglected the common areas and diverted Appellants' assessments for their own benefit. The district court dismissed after finding that Appellants' alleged injuries derived from injuries to the CEMHOA and that Appellants lacked standing to bring a direct suit. Because the district court correctly applied our standing precedent, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellees are Clipper Land Holdings, L.L.C., Clipper Construction, L.L.C., and corporate officers of those entities. Joseph Tufaro is President and Chairman of the CEMHOA, and is a member and manager of Clipper Land Holdings and Clipper Construction. Clipper Land Holdings controls the CEMHOA board. Jeffrey Neuport is the Chief Financial Officer ("CFO") of all three Clipper entities. Troy Duhon is a member and manager of Clipper Land Holdings and a former member and manager of Clipper Construction. All members of the CEMHOA, including Appellants, pay homeowners' assessments to the CEMHOA for the maintenance of the common areas and to promote the common benefit of the subdivision. Appellants brought this lawsuit after gaining access to the CEMHOA's records and finding allegedly questionable transactions and unexplained payments to Clipper Construction.

Appellants alleged that Tufaro billed the CEMHOA $157,383 via Clipper Construction without justification, and that the records did not explain total management fees for Clipper Construction of $33,708 over thirty-four months. Appellants also alleged that Appellees damaged them by increasing assessments, including $182 in total quarterly assessments, a $600 special assessment in 2006 due to Hurricane Katrina, and a $200 special assessment in 2008 for additional road reserve and CPA services (paid to Neuport). In addition

09-30984

to the damages caused by the increased assessments, Appellants claimed that Appellees harmed them by diverting funds that should have been used for repair efforts.    Finally, Appellants claimed that Appellees' operating procurement procedure was deficient, preventing the CEMHOA from taking advantage of competitive bidding for various services, and that the CEMHOA paid more for a trash contract granted to a company employing Tufaro's relatives than it otherwise would have.

Appellants alleged that these were "racketeering activities" in violation of RICO.[1] *See* 18 U.S.C. § 1962.  Appellants alleged that because RICO provides a cause of action for "[a]ny person injured in his business or property by reason of a violation of section 1962," 18 U.S.C. § 1964(c), they were entitled to damages.  Appellants sought treble damages for assessments paid that were diverted for Appellees' use and not utilized for the maintenance of the common areas or diverted for work performed for other Clipper entities.  Appellants also sought treble damages for the total amount of contracts procured that were not in the interest of the CEMHOA as well as any kickbacks received by Appellees for such contracts.

Appellees moved to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(6) and 9(b).  The district court found that Appellants lacked standing after applying our three-part test from *Whalen v. Carter*, 954 F.2d 1087, 1093 (5th Cir. 1992).  The district court declined to exercise supplemental jurisdiction over the remaining state law claims, and dismissed Appellants'

---

[1] Appellants also brought Louisiana state law claims, including Louisiana civil RICO, conversion, fraud and intentional misrepresentation, violation of fiduciary duties, and unjust enrichment, and requested that the court pierce the corporate veil and appoint a receiver to manage the CEMHOA's affairs.

lawsuit.[2] Appellants timely appealed.

## II. DISCUSSION

We review a district court's dismissal for lack of standing *de novo*. *United States v. $500,000.00 in U.S. Currency*, 591 F.3d 402, 404 (5th Cir. 2009). Where, as here, RICO plaintiffs bring claims analogous to shareholder derivative claims, we apply a three-part test to determine whether the plaintiffs satisfy general standing requirements. *See Ocean Energy II, Inc. v. Alexander & Alexander, Inc.*, 868 F.2d 740, 745 (5th Cir. 1989). We ask "(1) whether the racketeering activity was directed against the corporation; (2) whether the alleged injury to the shareholders merely derived from, and thus was not distinct from, the injury to the corporation; and (3) whether state law provides that the sole cause of action accrues in the corporation." *Whalen*, 954 F.2d at 1091. "If each of these questions can be answered 'yes,' then the [plaintiffs] do not have the requisite standing." *Id*.

As to *Whalen*'s first prong, Appellees directed their alleged racketeering activity against the CEMHOA. Appellees' alleged improper manipulation of the CEMHOA for their own benefit allegedly violated RICO. Appellants' claims are for monies diverted from the CEMHOA's treasury. Appellants do not allege that Appellees "committed any fraudulent acts with the *direct* intent to injure" Appellants. *Id*. at 1092.

As to *Whalen*'s second prong, the alleged injury to Appellants merely

---

[2] Although the district court's decision to dismiss the state law claims is subject to review for abuse of discretion, *Batiste v. Island Records Inc.*, 179 F.3d 217, 226 (5th Cir. 1999), Appellants do not argue that, if the district court correctly dismissed for lack of standing, the district court abused its discretion by dismissing the remaining state law claims. Therefore, we do not address this issue.

derived from, and was not distinct from, the injury to the CEMHOA. As to the duties to the CEMHOA that Appellees allegedly neglected, such as maintenance of the common areas, those injuries result from Appellees' breach of their obligations to the CEMHOA, not any obligation owed directly to Appellants. Thus, any injury Appellants suffered due to such neglect must have been suffered first by the CEMHOA. With regard to the higher assessments, those were allegedly necessary because Appellees used the CEMHOA's funds for their own benefit. Although the assessments were charged to Appellants directly, they were charged by the CEMHOA. Under Appellants' theory, the CEMHOA charged higher assessments both to make more money for Appellees and to keep the CEMHOA solvent. The diversion of those assessments caused the CEMHOA injury. Thus, Appellants have not shown an injury distinct from that of the CEMHOA.

As to *Whalen*'s third prong, Louisiana law provides that the sole cause of action accrues in the CEMHOA. In *Stall v. State Farm Fire and Casualty Co.*, a condo owner sued her property manager, the condo owner's association, and the association's insurer based on the settlement of insurance claims after Hurricane Katrina. 995 So. 2d 670, 672–73 (La. Ct. App. 2008). The condo owner asserted that the association's settlement with the insurer was insufficient, which affected her ability to repair her condo unit. *Id.* at 673. The Louisiana appellate court found that she lacked standing as to the claims against the manager and the association for breach of fiduciary duties. *Id.* at 675. The court held that the condo owner's "alleged injury would be to the corporation and not to [the condo owner] directly," and "courts have made it clear that a shareholder cannot assert an injury or loss as a separate claim." *Id.*

*Stall* is on point.  Although *Stall* dealt with a condo association instead of a homeowners' association, and negligence instead of RICO standing, the general standing principles that the *Stall* court relied on apply here.  *See also Sun Drilling Prods. Corp. v. Rayborn*, 798 So. 2d 1141, 1154 (La. Ct. App. 2001) ("[I]n situations where the alleged loss to the individual shareholder is the same loss that would be suffered by other shareholders, the loss is considered to be indirect.").  Therefore, we find that the third *Whalen* prong is also met.

We now turn to Appellants' arguments as to why the three-part test does not apply to this case.  Appellants argue that Appellees leave the CEMHOA just enough money to remain solvent, and that because the CEMHOA is a non-profit organization, depriving it of profits is not a harm to the organization.  Thus, according to Appellants, the CEMHOA is merely a conduit for Appellees' alleged wrongdoing and Appellants are injured directly.  Appellants' argument would require us to find that non-profit organizations can never be injured unless they are actually driven out of business.  We reject this meritless contention.

Appellants also argue that the special assessments directly injure them because they pay them periodically, unlike a stockholder who purchases stock only once.  However, in *Bass v. Campagnone*, union members brought a civil RICO suit against the local union president, alleging, among other things, that his actions caused them to pay increased union dues.  838 F.2d 10, 12 (1st Cir. 1988).  The First Circuit rejected the plaintiffs' arguments because the alleged injuries were common to all union members and did not distinguish based on the continuing harm inflicted by periodic union dues.  *Id*.  We find *Bass* instructive here.  Appellants provide no case law to support their argument that periodic and continuing harm makes the injury direct, and we see no reason to make

6

such a distinction. Therefore, we rely on *Whalen*'s three-part test and reject Appellants' proposed distinction.

Appellants attempt to draw a parallel between this case and our holding in *Whalen*. In *Whalen*, although we answered yes to the first two prongs of our standing test, we held that Louisiana law afforded the limited partners a private action, relying on *Dupuis v. Becnel Co.*, 535 So. 2d 375 (La. 1988). *Whalen*, 954 F.2d at 1093–94. However, standing was not an issue in suits brought by limited partners against general partners, because, in Louisiana, partners owe fiduciary duties not only to the partnership, but directly to the other partners. *See Brockman v. Salt Lake Farm P'ship*, 768 So. 2d 836, 844 (La. Ct. App. 2000). Therefore *Whalen*'s holding as it pertains to standing for limited partners does not change our analysis in this case.

Finally, we reject Appellants' argument that we should find standing because Appellees control the CEMHOA. Appellants' argument merely highlights the rationale for a derivative suit remedy. *See McClure v. Borne Chemical Co.*, 292 F.2d 824, 827 (3d Cir. 1961) (stating that the derivative suit was created to provide a remedy for shareholders where the alleged wrongdoers controlled the corporation and there is little chance the corporation would bring suit itself). Shareholders can assert the interests of the corporation against management when those in control of the corporation are acting against its interests. *See FDIC v. Barton*, 96 F.3d 128, 134 (5th Cir. 1996) (in a case interpreting Louisiana law, stating that the fact that directors controlled the corporation did not make it impossible to sue them, but that shareholders could have brought a derivative suit). Finding an exception to our standing precedent here would ignore this well-established remedy. *See Palowsky v. Premier*

*Bancorp, Inc.,* 597 So. 2d 543, 545 (La. Ct. App. 1992) ("[A] shareholder may only sue to recover losses to a corporation resulting from mismanagement and breaches of fiduciary duties secondarily through a shareholder's derivative suit.").

## III. CONCLUSION

Because we answer all three *Whalen* standing questions positively and because Appellants' other arguments are without merit, we find that Appellants lacked standing. We therefore AFFIRM.

AFFIRMED.