REVISED FEBRUARY 17, 2003

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

———————————————

No. 01-51045

———————————————

DONNIE McMANUS and JUNE McMANUS,

Plaintiffs-Appellees,

versus

FLEETWOOD ENTERPRISES, INC., ET AL,

Plaintiffs,

FLEETWOOD ENTERPRISES, INC.,

Defendant-Appellant.

———————————————————————

Appeal from the United States District Court
for the Western District of Texas

———————————————————————

February 14, 2003

Before EMILIO M. GARZA and CLEMENT, Circuit Judges, and HUDSPETH, District Judge.[*]

EDITH BROWN CLEMENT, Circuit Judge:

The district court certified a subclass of plaintiffs who purchased Class A motor homes in Texas

from defendant Fleetwood Enterprises, Inc., a California corporation, between 1994 and 1999.

Representative plaintiffs Donnie and June McManus allege that Fleetwood misrepresented the towing

———————————

[*] District judge for the Western District of Texas, sitting by designation.

1

capacity of its motor homes. They seek injunctive relief under Federal Rule of Civil Procedure 23(b)(2) and, in the alternative, damages under Rule 23(b)(3). The district court abused its discretion in certifying the class under Rule 23(b)(3), except with regard to the McManuses' claim for breach of implied warranty of merchantability. The district court also abused its discretion in certifying the class under Rule 23(b)(2). We affirm in part, and reverse and remand in part.

## I. FACTS AND PROCEEDINGS

The McManuses purchased a Fleetwood motor home in Texas in 1997, with the intention of towing a Jeep Cherokee behind it. Donnie McManus noticed a tag affixed to the wardrobe door stating that the motor home could tow 3,500 pounds, and the sales representative assured him that the motor home would be able to tow a Jeep Cherokee. The wardrobe door tag was titled "CARRYING CAPACITY" and it listed various statistics, including an entry reading "GTW  3500 LBS ." The tag explained:

> GTW (Gross Towed Weight): means the maximum permissible loaded weight of a trailer or car that this motor home has been designed to tow. This cannot be increased by changing the trailer hitch.

The bottom of the tag stated in large, bolt print:

> CONSULT OWNER'S MANUAL FOR WEIGHING
> INSTRUCTIONS AND TOWING GUIDELINES

A Fleetwood engineer contacted Fleetwood's chassis manufacturers in 1994 and discovered that, according to the chassis manufacturers, the motor homes would require supplemental brakes to safely tow 3,500 pounds. For example, Ford told Fleetwood that its motor homes would require supplemental brakes when towing anything above 1,500 pounds. The engineer concluded in a company memorandum, "To assure safe operation of our products, the wardrobe door tag, owners

2

manual and advertising material should reflect two GCW's [gross combination weight], one for towed loads without brakes and one for towed loads with brakes."

The McManuses allege that the representation that the motor home could safely *tow* 3,500 pounds amounted to a representation that it could safely *brake* while towing 3,500 pounds. Their complaint asserts the following five claims: (1) violation California's Consumers Legal Remedies Act, CAL CIV. CODE §§ 1750-1784; (2) breach of express warranty; (3) breach of implied warranty of merchantability under California's Song-Beverly Consumer Warranty Act, CAL CIV. CODE § 1792; (4) negligent misrepresentation; and (5) fraudulent concealment. They seek injunctive relief under Federal Rule of Civil Procedure 23(b)(2) to compel Fleetwood to provide each class member information concerning the towing limitations, as well as supplemental braking equipment. In the alternative, the McManuses seek money damages under Rule 23(b)(3).

Fleetwood counters, in short, that the wardrobe tag was accurate because it said nothing about supplemental brakes, and because it conspicuously led the consumer to a paper trail that would reveal the relevant information. The tag directed the consumer to the motor home owner's manual, which directed the consumer to the chassis manufacturer's manual containing the relevant towing limitations.[1]

The district court originally certified a nationwide class of all persons who purchased new, and still owned, a Fleetwood Class A motor home manufactured between 1994 and 1999. On a motion for reconsideration to take into account *Spence v. Glock*, 227 F.3d 308 (5th Cir. 2000), which impacts class certification in cases dealing with multistate choice-of-law issues, the district court

---

[1]Where General Motors was the chassis manufacturer, the relevant information was in the service manual, not the chassis manufacturer's manual. Fleetwood sent letters to purchasers of motor homes equipped with a GM chassis to clarify any confusion.

decertified the national class. Following oral argument on their supplemental motion for certification of a nationwide class, the McManuses filed a motion indicating that they wished to proceed with certification of a Texas-only subclass. The district court granted the post-hearing motion and certified the subclass, with no apparent opposition from Fleetwood. Fleetwood then filed a motion for reconsideration, prompting the district court to withdraw its previous order. After considering Fleetwood's new objections to the Texas-only subclass, the district court issued an order concluding that a Texas-only subclass was proper under both Rule 23(b)(2) and Rule 23(b)(3). As a preliminary determination in deciding that the Rule 23 class action prerequisites were met, the district court also concluded, contrary to the McManuses' assertions, that Texas law would govern the dispute instead of California law.

## II. DISCUSSION

The McManuses now concede that Texas law governs the dispute, so the only issue for this interlocutory appeal is the propriety of the district court's certification decision, which we review for abuse of discretion. *Spence,* 227 F.3d at 310-11. "The decision to certify is within the broad discretion of the court, but that decision must be exercised within the framework of [R]ule 23. The party seeking certification bears the burden of proof." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996) (internal citations omitted). Although "the strength of a plaintiff's claim should not affect the certification decision," the district court must look beyond the pleadings to "understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues." *Id.* at 744.

Under Rule 23, plaintiffs must first define the class with specificity and show they are members of the class. *Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1105 (5th Cir. 1993). They must then

4

establish all four requirements of Rule 23(a). *Shivangi v. Dean Witter Reynolds, Inc.*, 825 F.2d 885, 890 (5th Cir. 1987). These requirements are: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a). Fleetwood does not challenge the district court's conclusion that plaintiffs have met these requirements.[2] In addition to satisfying the above requirements, the parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3). FED. R. CIV. P. 23(b). We consider the district court's decision under Rule 23(b)(3) and Rule 23(b)(2), in turn.

A. Certification is only proper under Rule 23(b)(3) for the McManuses' claim for breach of implied warranty of merchantability

Under Rule 23(b)(3), the district court may certify a class where it determines "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3). Fleetwood argues that the common questions of fact do not predominate over individual matters. In particular, Fleetwood asserts that since each of the plaintiffs' claims requires a showing of reliance on the alleged misrepresentation, the district court abused its discretion in certifying the class under Rule 23(b)(3).

---

[2]Fleetwood's primary argument is that the class members' claims are too dissimilar for class treatment, particularly with respect to the issue of whether the class members relied on the representations of the wardrobe tag. This argument could be construed as a challenge to two of the Rule 23(a) requirements, (2) commonality and (3) typicality. However, since the thresholds for commonality and typicality are not high, *see James v. City of Dallas*, 254 F.3d 551, 570-71 (5th Cir. 2001), we evaluate the argument as against the more exacting demands of Rule 23(b)(3) and Rule 23(b)(2).

The McManuses respond that the district court may presume class-wide reliance because the same information—that the motor homes could tow 3,500 pounds—was given to all of the class members.

### 1. *Reliance may not be presumed under Texas law*

The McManuses rely upon *Life Ins. Co. of Southwest v. Brister*, 722 S.W.2d 764 (Tex. App. 1986) and *Reserve Life Ins. Co. v. Kirkland*, 917 S.W.2d 836 (Tex. App. 1996) for the proposition that Texas law permits a class-wide presumption of reliance. In each case, the appellate court determined that the proposed class members had a "sufficient community of interest," *Brister*, 722 S.W.2d at 774, to justify certification under Texas Rule of Civil Procedure 42. *See Kirkland*, 917 S.W.2d at 843-44; *Brister*, 722 S.W.2d at 773-75. The result was premised on the view that Texas courts "should err in favor and not against the maintenance of the class action since the class certification order is always subject to modification should later developments during the course of the trial so require." *Brister*, 722 S.W.2d at 774-75. The Texas Supreme Court has since overruled those cases, explicitly "reject[ing] this approach of certify now and worry later." *Southwestern Refining Co. v. Bernal*, 22 S.W.3d 425, 435 (Tex. 2000).

The *Bernal* court emphasized that "[p]rocedural devices may 'not be construed to enlarge or diminish any substantive rights or obligations of any parties to any civil action.'" *Id*. at 437 (citing TEX. R. CIV. P. 815). In a particularly instructive post-*Bernal* case, the Texas Supreme Court held that issues of reliance defeated the predominance requirement of Rule 42 in a class action alleging, among other things, that advertising for dental office management software was false and misleading:

> [T]he 20,000 class members in the present case are held to the same standards of proof of reliance—and for that matter all the other elements of their claims—that they would be required to meet if each sued individually. This does not mean, of course, that reliance or other elements of their causes of action cannot be proved class-wide with evidence generally applicable to all class members; class-wide proof is possible when class-wide evidence exists.

6

But evidence insufficient to prove reliance in a suit by an individual does not become sufficient in a class action simply because t here are more plaintiffs. Inescapably individual differences cannot be concealed in a throng. The procedural device of a class action eliminates the necessity of adducing the same evidence over and over again in a multitude of individual actions; it does not lessen the qualit y of evidence required in an individual action or relax substantive burdens of proof.

*Henry Schein, Inc. v. Stromboe*, ___ S.W.3d___, No. 00-1162, 2002 WL 31426407, at \*13 (Tex. Oct. 31, 2002).

We note additionally that neither *Brister* nor *Kirkland* speaks to the *substantive* standard of proof of the underlying causes of action; those cases are concerned only with the *procedural* standard to justify certification under *Texas* procedural law. Since we are bound to follow *Federal* Rule of Civil Procedure 23, not Texas' corresponding Rule 42, *Brister* and *Kirkland* are not instructive to the issue. As *Bernal* and *Henry Schein* make clear, Texas law does not permit the type of presumed reliance urged by the McManuses.

2. *Reliance issues are fatal to a Rule 23(b)(3) class for claims of fraudulent concealment and negligent misrepresentation*

"Claims for money damages in which individual reliance is an element are poor candidates for class treatment, at best. We have made that plain." *Patterson v. Mobil Oil Corp.*, 241 F.3d 417, 419 (5th Cir. 2001); *see also Castano*, 84 F.3d at 745 ("[A] fraud class action cannot be certified when individual reliance will be an issue."). Here, it is undisputed that class members would only be entitled to relief under theories of fraudulent concealment or negligent misrepresentation if they could show they relied on the alleged misrepresentation. Reliance will vary from plaintiff to plaintiff, depending on the circumstances surrounding the sale. For instance, Donnie McManus testified at his deposition that he read the wardrobe door tag and asked the salesperson about the towing capacity. June McManus testified that she did not read the tag, nor did she draw any conclusion as to whether the

7

motor home would be able to tow a Jeep Cherokee. The individual reliance issues are apparent even as between the two representative plaintiffs. Other potential class members certainly may have read the wardro be do or tag as Fleetwood reads it—as being silent on the issue of supplemental brakes—and certainly some class members may have actually *known* at the time of purchase that supplemental brakes would be needed. At this point in the litigation, the McManuses have failed to show that these potential variables are sufficiently uniform to justify class treatment, and we conclude that the district court abused its discretion in finding that questions of fact common to the class were predominant, for purposes of Rule 23(b)(3), with respect to the McManuses' claims for fraudulent inducement and negligent misrepresentation.

3. *The McManuses' claim, under Rule 23(b)(3), for breach of express warranty requires reliance and is inappropriate for class treatment*

The McManuses argue that their claim for breach of express warranty does not require a showing of reliance, thereby avoiding the variable factual circumstances explained above. We disagree. Under Texas law, an express warranty is created when a seller makes a representation or promise "which relates to the goods and becomes part of the *basis of the bargain*. . . ." TEX. BUS. & COM. CODE § 2.313 (emphasis added). There is a split of authority as to whether that wording (from the U.C.C.) is meant to dispense with the common law's requirement of reliance in express warranty cases. *See* Charles A. Heckman, *"Reliance" or "Common Honesty of Speech": The History and Interpretation of Section 2-31 of the Uniform Commercial Code?*, 38 CASE W. RES. L. REV. 1 (1987). The Texas Supreme Court has concluded that "'[b]asis of the bargain' loosely reflects the common-law express warranty requirement of reliance," and that therefore an express warranty claim "requires *a form of reliance.*" *Am. Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 436 (Tex. 1997). (emphasis added).

That court has recently characterized a breach of express warranty claim as requiring reliance "*to a certain extent*." *Henry Schein*, ___ S.W.3d at ___, 20002 WL 31426407, at \*7 (emphasis added).

Although the precise level of reliance required under Texas law to recover for breach of express warranty is unclear, purchasers who understood the towing limitations, or who did not read or consider the wardrobe door tag, cannot be said to have relied on the allegedly misleading wardrobe tag to *any* extent. Thus, the McManuses have failed to show that the representations were part of the "basis of the bargain" to such a uniform extent that class certification is appropriate under Rule 23(b)(3) for the breach of express warranty claim.

4. *The district court did not abuse its discretion in certifying the McManuses' claim for breach of implied warranty of merchantability under Rule 23(b)(3)*

The McManuses argue that their claim for breach of implied warranty of merchantability, *see* TEX. BUS. & COM. CODE § 2.314, does not require a showing of reliance. *See Khan v. Velsicol Chem. Corp.*, 711 S.W.2d 310, 319 (Tex. App. 1986). Fleetwood responds that the McManuses failed to plead the claim, and in the alternative, that the claim is unsuitable for class treatment. We conclude that the claims were properly pleaded, and that the district court did not abuse its discretion in certifying a class for this claim under Rule 23(b)(3).

The McManuses complaint enumerates five causes of action under separate headings: (1) violation California's Consumers Legal Remedies Act, CAL CIV. CODE §§ 1750-1784; (2) breach of express warranty; (3) breach of implied warranty of merchantability under California's Song-Beverly Consumer Warranty Act, CAL CIV. CODE § 1792; (4) negligent misrepresentation; and (5) fraudulent concealment. In a section of the complaint subtitled "CLASS ACTION" the McManuses state:

> This is an action sought to be certified as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. This action involves Defendant's violations of the state consumer

9

protection laws, in particular California Consumer Legal Remedies Act and the Song-Beverly Warranty Act, as well as, alternatively, *the corresponding consumer protection laws of other states*, in the sale of motor homes to its customers.

Second Amended Compl. at ¶ 7 (emphasis added). The McManuses argue that Texas' implied warranty of merchantability provision is included in their broadly worded complaint as a "corresponding consumer protection law[]" of Texas. Fleetwood points out that the Texas implied warranty of merchantability claim would "correspond[]" only to California's *identical* statute (both from the U.C.C.)— a statute explicitly *not* pleaded. *Compare* TEX. BUS. & COM. CODE § 2.314 *with* CAL. COM. CODE § 2314.

"The notice pleading requirements of Federal Rule of Civil Procedure 8 and case law do not require an inordinate amount of detail or precision." *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 434 (5th Cir. 2000). The plaintiff need not correctly specify the legal theory, so long as the plaintiff alleges facts upon which relief can be granted. *Id*. Here, the McManuses pleaded a version of implied warranty under a California statute. Now that it is agreed Texas law applies, the most natural reading of the McManuses' broadly-worded complaint would include *some* version of that claim under Texas law. Moreover, the McManuses' complaint alleges that their motor home was not "fit for the ordinary purposes for which those vehicles are used," Second Amended Compl. at ¶ 44, tracking the language of the relevant Texas statute. TEX. BUS. & COM. CODE ANN. § 2.314 ("Goods to be merchantable must be at least such as. . . are fit for the ordinary purposes for which such goods are used. . . .").

We note also that the McManuses' specifically mentioned Texas' implied warranty provision—and the fact that it does not require a showing of reliance—in its motion for certification of a Texas-only subclass. Fleetwood failed to argue to the district court that the implied warranty

claim had not been pleaded properly, and the district court's order mentions implied warranty of merchantability under Texas law. We conclude that the claim is properly encompassed in the pleadings.

The McManuses' theory is that the motor homes were not "fit for the ordinary purposes for which such goods are used." TEX. BUS. & COM. CODE ANN. § 2.314 . In other words, the motor homes are not fit for the ordinary purpose of towing because they cannot safely tow a normal car without supplemental breaks. Fleetwood argues that the motor homes *are* fit for their ordinary purpose. Keeping in mind that "the strength of a plaintiff's claim should not affect the certification decision," *Castano*, 84 F.3d at 744, we find this line of argument inapposite for purposes of this appeal.

Under Texas law, "[a] plaintiff in an implied warranty of merchantability case has the burden of proving that the goods were defective at the time they left the manufacturer's or seller's possession." *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 444 (Tex. 1989). It is undisputed that Fleetwood's Class A motor homes were equipped with a hitch for towing, and whether or not the alleged towing limitations rendered the motor homes defective is a question for the jury. More importantly, it is a question whose answer will not vary from plaintiff to plaintiff because the inquiry is focused on "*the time [the goods] left the manufacturer's or seller's possession*." *Id.* (emphasis added).

Fleetwood asserts that the measure of damages will vary from plaintiff to plaintiff, pointing out that the McManuses, for example, were not damaged at all. Donnie McManus testified at his deposition that he was able to tow his Jeep Cherokee behind his motor home without the use of supplemental brakes. Fleetwood emphasizes that the McManuses have not shown *any* class members

11

were actually injured.[3] These arguments misapprehend the nature of the implied warranty of merchantability cause of action. In this *contract* cause of action, the McManuses seek the difference in the actual value of the motor home and the value as warranted. *See* TEX. BUS. & COM. CODE § 2.714(b). "Here, the damages sought by the [McManuses] are not rooted in the alleged defect of the product as such, but in the fact that they did not receive the benefit of their bargain." *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 455 n.4 (5th Cir. 2001). Thus, whether or not any member of the class actually suffered any *physical* injury is immaterial. Likewise, it is immaterial whether or not the class members even intended to use their motor homes for towing because all a jury need determine is that the motor homes were defective with respect to a motor home's "*ordinary* purpose." TEX. BUS. & COM. CODE ANN. § 2.314 (emphasis added).

We conclude that the district court did not abuse its "broad discretion," *Castano*, 84 F.3d at 740, in certifying the McManuses' claim for breach of implied warranty of merchantability under Rule 23(b)(3).

## B. Certification under Rule 23(b)(2) is improper

Certification under Rule 23(b)(2) is appropriate where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." FED. R. CIV. P. 23(b)(2). Fleetwood argues that, considering the variable purchasing scenarios, Fleetwood has not "acted or refused to act on grounds generally applicable to the class." We disagree. Rule 23(b)(2)'s requirement that a defendant have acted consistently towards the class is plainly more permissive than

---

[3]We note, however, that Donnie McManus stated in an affidavit that on one occasion when he was towing his Jeep Cherokee, the motor home's brakes began to give way and McManus was forced to downshift his motor home and pull over to the side of the road.

23(b)(3)'s requirement that questions common to the class *predominate* over individual issues. Here, the McManuses assert that Fleetwood made the exact *same* allegedly misleading representation to *all* the class members—i.e., that the motor homes could safely tow 3,500 pounds. We conclude that the district court did not abuse its discretion in finding that this constituted an action "generally applicable to the class."

Fleetwood next argues that Rule 23(b)(2) certification is not appropriate when the suit predominately seeks money damages. *See Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 975 (5th Cir. 2000)*; Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 413 (5th Cir. 1998). This Court in *Allison* held that "monetary relief predominates in (b)(2) class actions unless it is incidental to requested injunctive or declaratory relief." *Allison*, 151 F.3d at 415.

Here, unlike *Bolin* and *Allison*, the district court certified the class under *both* (b)(2) and (b)(3), and the plaintiffs seek injunctive relief and damages relief as *alternative* remedies. Thus, *Allison* and *Bolin* are slightly off the mark. We need not ask whether damages "predominate"; we ask only whether injunctive relief, *to the exclusion* of damages, is appropriate under Rule 23(b)(2). We conclude that it is not.

"(S)ubdivision (b)(2) was added to Rule 23 in 1966 primarily to facilitate the bringing of class actions in the civil rights area." *Kincade v. Gen. Tire & Rubber Co.*, 635 F.2d 501, 506 n.6 (5th Cir. Jan. 1981) (quoting 7A C. Wright & A. Miller, FEDERAL PRACTICE & PROCEDURE § 1775 (1972)). The advisory committee's notes state that Rule 23(b)(2) would be appropriate in a case to enjoin price discrimination, or in a case to enjoin illegal "tying." FED. R. CIV. P. 23(b)(2) advisory committee's note. Rule 23(b)(2) has also been used extensively to obtain injunctive relief against the enforcement of various complex statutory schemes. *See* 7A C. Wright, et al., FEDERAL PRACTICE AND

PROCEDURE § 1775, at 484 (2d ed. 1986).

Unlike Rule 23(b)(3), class members are not permitted to opt-out of a Rule 23(b)(2) class to pursue their claims individually. *See* FED. R. CIV. P. 23(c)(2). "[B]ecause of the group nature of the harm alleged and the broad character of the relief sought, the (b)(2) class is, by its very nature, assumed to be a homogeneous and cohesive group with few conflicting interests among its members." *Allison*, 151 F.3d at 413. This Court has explained:

> Actions for class-wide injunctive or declaratory relief are intended for (b)(2) certification precisely because they involve uniform group remedies. Such relief may often be awarded without requiring a specific or time-consuming inquiry into the varying circumstances and merits of each class member's individual case. When it does, the relatively complex calculations typically required in class actions for money damages are unnecessary. For these reasons, proposed (b)(2) classes need not withstand a court's independent probe into the superiority of the class action over other available methods of adjudication or the degree to which common issues predominate over those affecting only individual class members, as (b)(3) classes must.

*Id*. at 414.

The McManuses' lawsuit is markedly different from the paradigm Rule 23(b)(2) class action. First, the ordinary relief for their lawsuit would be money damages, not injunctive relief. *See* TEX. BUS. & COM. CODE § 2.714(b) ("The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount."); *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 49 (Tex. 1998) ("Texas recognizes two measures of direct damages for common-law fraud: the out-of-pocket measure and the benefit-of-the-bargain measure."); *Federal Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991) ("The damages recoverable for a negligent misrepresentation are those necessary to compensate the plaintiff for the pecuniary loss to

14

him of which the misrepresentation is legal cause. . . .").

Second, Fleetwood sold its motor homes over a limited period of time to a limited number of purchasers and does not have an ongoing relationship with its purchasers. Third, Fleetwood would have to provide *individual* relief, based on the various models of motor homes, to each individual plaintiff having purchased a motor home between 1994 and 1999, as opposed to a "uniform group remed[y]," *Allison*,151 F.3d at 414.

These sharp differences make the class-wide injunctive relief contemplated under Rule 23(b)(2) inappropriate to this case. We could find no case where injunctive relief was awarded under comparable circumstances. This result is unsurprising because damages would be the superior remedy, especially considering that some class members may already own, or have no need for, supplemental brakes. We emphasize that otherwise inappropriate injunctive relief does not become appropriate for class treatment merely because the more permissive Rule 23(b)(2), as opposed to (b)(3), contemplates injunctive relief. The district court abused its discretion in allowing the Rule 23(b) classifications to inform the appropriate remedy, instead of vice versa.[4]

Moreover, permitting this lawsuit to continue as a Rule 23(b)(2) class would undo the careful interplay between Rules 23(b)(2) and (b)(3). That is, the class members would potentially receive a poor substitute for individualized money damages, without the corresponding notice and opt-out benefits of Rule 23(b)(3); and defendants would potentially be forced to pay what is effectively money damages, without the benefit of requiring plaintiffs to meet the rigorous Rule 23(b)(3) requirements. *Cf. Bolin*, 231 F.3d at 976 (reiterating our concern that "plaintiffs may attempt to shoehorn damages

[4]The McManuses' request for a safety notice is inappropriate under Rule 23(b)(2) because it is undisputed that the motor home purchasers have received the relevant information either by letter from Fleetwood, or in their chassis owner's manual.

actions into the Rule 23(b)(2) framework, depriving class members of notice and opt-out protections"). We conclude that the district court abused its discretion in certifying the class under Rule 23(b)(2).

## III. CONCLUSION

The judgment of the district court is affirmed in part, and reversed and remanded in part.