IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 10, 2008

Charles R. Fulbruge III
Clerk

No. 07-40982

SHERRIE GILBERT, Individually and as personal representative
of the Estate of Chrystal Newby Willis, deceased;
DARCIE BAGGETT, Individually and as personal representative
of the Estate of Rebecca Shifflett, deceased

                    Plaintiffs - Appellants

v.

OUTBACK STEAKHOUSE OF FLORIDA INC

                    Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 5:06-CV-7

Before DAVIS, CLEMENT, and ELROD, Circuit Judges.

PER CURIAM:[*]

       After two employees at an Outback Steakhouse restaurant were murdered in a robbery, the representatives of their estates sued Outback Steakhouse of Florida, Inc. ("OSF") for damages and have appealed the district court's grant of OSF's motion for summary judgment. For the following reasons, we affirm.

_____

       [*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. FACTS AND PROCEEDINGS

Chrystal Newby Willis and Rebecca Shifflet (the "decedents") were employed at an Outback Steakhouse restaurant in Texarkana, Texas. On September 1, 2003, two former employees who had recently been fired (the "assailants") killed the decedents while robbing the restaurant. Matthew Hines, the managing partner of the restaurant, was also killed in the robbery. In October 2005, Sherrie Gilbert and Darcie Baggett, individually and as personal representatives of the estates of the decedents (collectively referred to as "Gilbert"), filed suit against OSF. The complaint seeks damages against OSF as the employer of the decedents, alleging that OSF intentionally caused their deaths, or, alternatively, that OSF's negligence resulted in the murders.

As discovery progressed, Gilbert learned that the decedents, the assailants, and Hines had actually been employed by an independent contractor of OSF—Outback Steakhouse Restaurant Services ("OSRS")—pursuant to an employment services agreement between OSRS and OSF. The premises of the Texarkana restaurant were owned by OSF and leased to a third entity, Outback Steakhouse of Dallas-II Ltd. ("OSD"). While OSF held the lease and intellectual property rights used by the Texarkana restaurant, OSRS was responsible for managing personnel and all hiring and firing decisions, and OSD was in charge of maintaining the premises.

Gilbert filed a motion for leave to amend the complaint on October 13, 2006—over eight months after the deadline to amend pleadings set by the scheduling order. The proposed amended complaint would have added OSRS and OSD as defendants and set forth more detailed claims of negligence against OSF, including as the premises owner. A magistrate judge denied the motion, concluding that the addition of new parties at that juncture would cause undue

2

delay, and the assertion of new claims and allegations was potentially prejudicial to OSF. Gilbert did not object to the magistrate judge's decision.

On March 22, 2007, OSF filed a motion for summary judgment, arguing that Gilbert's claims failed as a matter of law because they were based on OSF's status as the employer of the decedents and assailants. In response, Gilbert conceded that OSRS was the relevant employer, but claimed that OSF nevertheless owed a duty of care to the decedents as the premises owner and as the entity in control of the actual operations of the restaurant. While the summary judgment motion was pending, Gilbert filed a second motion for leave to amend the complaint by adding references to OSF's liability as the premises owner and as a party to the contract with OSRS in the negligence cause of action.

On June 29, 2007, the district court denied the motion for leave to amend as an improper attempt to pursue a new theory of liability on the eve of trial, finding that the original negligence cause of action did not properly allege a claim against OSF as the premises owner. On the same day, it entered summary judgment against Gilbert, concluding that OSF could not be held liable for the damages suffered by employees of OSRS. The district court noted in its summary judgment order that Gilbert's arguments regarding premises liability were also unavailing and referenced its order denying leave to amend. Gilbert's motion to amend or alter the judgment was subsequently denied. Gilbert appeals the district court's grant of summary judgment.

## II. STANDARD OF REVIEW

This court "reviews a district court's grant of summary judgment de novo, applying the same legal standards as the district court." Condrey v. SunTrust Bank of Ga., 429 F.3d 556, 562 (5th Cir. 2005). On review of a grant of summary judgment, "[t]he evidence and inferences from the summary judgment record are viewed in the light most favorable to the nonmovant." Minter v. Great Am. Ins. Co. of N.Y., 423 F.3d 460, 465 (5th Cir. 2005). Typically, "[s]ummary judgment is proper when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Kane v. Nat'l Fire Ins. Co., 535 F.3d 380, 384 (5th Cir. 2008) (internal quotations omitted); see also FED. R. CIV. P. 56(c). This court may "affirm a grant of summary judgment on any grounds supported by the record and presented to the court below." Hernandez v. Velasquez, 522 F.3d 556, 560 (5th Cir. 2008) (per curiam).

While "failure to state a claim usually warrants dismissal under Rule 12(b)(6)," it may also serve as a basis for summary judgment. Whalen v. Carter, 954 F.2d 1087, 1098 (5th Cir. 1992). In that case, "the failure to state a claim is the 'functional equivalent' of the failure to raise a genuine issue of material fact." Id. A motion for summary judgment challenging the sufficiency of a plaintiff's pleadings will be "evaluated much the same as a 12(b)(6) motion to dismiss." Ashe v. Corley, 992 F.2d 540, 544 (5th Cir. 1993). This court must therefore "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam). In this posture, a motion for summary judgment is properly granted "if, accepting all alleged facts as true, the plaintiffs' complaint nonetheless failed to state a claim." Ashe, 992 F.2d at 544.

## III. DISCUSSION

### A. Premises Liability Claim

Gilbert challenges the district court's holding that her premises liability claim was insufficiently pleaded.[1] Other than in the situations expressly enumerated in Rule 9(b), a complaint need only recite "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 8 thus sets out a "low bar" to evaluate the sufficiency of a claim, requiring only that a plaintiff's pleadings "'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" Gen. Elec. Capital Corp. v. Posey, 415 F.3d 391, 396 (5th Cir. 2005) (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002)). Accordingly, "[t]he notice pleading requirements of Federal Rule of Civil Procedure 8 and case law do not require an inordinate amount of detail or precision." McManus v. Fleetwood Enters., Inc., 320 F.3d 545, 551 (5th Cir. 2003) (internal quotation omitted). A complaint for negligence need not "parse the negligence allegation into separate elements," Posey, 415 F.3d at 396, nor is it required to "correctly specify the legal theory" giving rise to the claim for relief, McManus, 320 F.3d at 551.

However, a plaintiff must "plead sufficient facts to put the defense on notice of the theories on which the complaint is based." TIG Ins. Co. v. Aon Re, Inc., 521 F.3d 351, 357 (5th Cir. 2008) (internal quotation omitted). The

---

[1] Gilbert's argument that the district court improperly invoked Texas pleading rules is meritless. Gilbert is correct that "federal law governs the pleading requirements of a case in federal court." TIG Ins. Co. v. Aon Re, Inc., 521 F.3d 351, 357 (5th Cir. 2008) (internal quotation omitted). The district court, in assessing the sufficiency of Gilbert's premises liability claim, made a passing reference to Texas's requirement that plaintiffs "plead and prove" the elements of a liability theory. However, it also cited extensively to federal pleading rules and case law. Ultimately, we apply Rule 8 in conducting our de novo review and are not concerned with the district court's mention of Texas pleading requirements.

plaintiff's pleadings must both "(1) provide notice of circumstances which give rise to the claim, [and] (2) set forth sufficient information to outline the elements of the claim or permit inferences to be drawn that these elements exist." Beanal v. Freeport-McMoran, Inc., 197 F.3d 161, 164 (5th Cir. 1999). The Supreme Court recently reaffirmed these principles, stating that "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 n.3 (2007).

In denying Gilbert's motion for leave to amend, the district court noted that because the proposed addition of a premises liability claim introduced "a substantial change in [Gilbert's] theory of recovery," it would not allow the amendment at such a late stage in the proceedings. Importantly, Gilbert does not appeal the denial of leave to amend. Rather, she contends that the second cause of action alleged in the original complaint—a broad negligence claim against OSF—adequately encompasses a premises liability theory of recovery, and that leave to amend was only sought to clarify the various theories of liability, not to add new ones. The complaint's negligence cause of action reads as follows:

6.
Alternative Theories of Recovery
Negligence / Gross Negligence of Outback Steakhouse

In the alternative, Plaintiffs plead that the negligence and gross negligence of OUTBACK STEAKHOUSE caused the incident made the basis of this suit.

6.1 Plaintiffs would show that the assaults which lead to the deaths of [the decedents] and another employee of the Texarkana OUTBACK STEAKHOUSE restaurant were committed for reasons personal to the assailant, i.e. the assailant had a vendetta against OUTBACK STEAKHOUSE as a result of his being terminated from employment at this facility.

6.2 Therefore, the assault did not occur within the course of [the decedents'] employment and Plaintiffs are entitled to recover under both the Texas Wrongful Death Act and the Survival Statute.

From a fair reading of these and the other allegations of the complaint, we agree with the district court that OSF was not on notice that it was being sued as the premises owner. Under Texas law,

> [W]hen the injured party is an invitee . . . , the elements of a premises claim are: (1) Actual or constructive knowledge of a condition on the premises by the owner or occupier; (2) That the condition posed an unreasonable risk of harm; (3) That the owner or occupier did not exercise reasonable care to reduce or eliminate the risk; and (4) That the owner or occupier's failure to use such care proximately caused the plaintiff's injury.

CMH Homes, Inc. v. Daenen, 15 S.W.3d 97, 99 (Tex. 2000). In order to properly plead her claim against OSF, Gilbert was not required to "correctly specify the legal theory"—i.e., premises liability—underlying the claim. McManus, 320 F.3d at 551; see also De La Hoya v. Coldwell Banker Mexico, Inc., 125 F. App'x 533, 537 (5th Cir. 2005) (unpublished) (noting that "Plaintiffs' failure to include the phrase 'single business enterprise'" in a complaint seeking to pierce the corporate veil was not "dispositive" for purposes of dismissal). The complaint did not even need to outline all the elements of her claim for premises liability under Texas law. See Posey, 415 F.3d at 396.

7

However, in this case, the claim fails as inadequate because it does not "permit inferences to be drawn that these elements exist." Beanal, 197 F.3d at 164. The complaint does not contain a single reference, whether explicit or implicit, to OSF's position as the holder of the lease for the premises, to the existence of any condition or defect of the premises, or to the decedents' status as invitees on the premises. While Gilbert correctly notes that under Texas law, a claim based on premises liability is a negligence action, see Corbin v. Safeway Stores, Inc., 648 S.W.2d 292, 295 (Tex. 1983), the complaint's mere inclusion of a broad cause of action for negligence is insufficient to sustain her claim. "A complaint which contains a bare bones allegation that a wrong occurred and which does not plead any of the facts giving rise to the injury, does not provide adequate notice." Walker v. S. Cent. Bell Tel. Co., 904 F.2d 275, 277 (5th Cir. 1990) (per curiam) (also noting that "[i]f the complaint had alleged nothing further [than a claim for intentional infliction of emotional injury], it would have failed to provide notice"). In fact, the complaint's consistent allegations that OSF was the employer of the decedents and the former employer of the assailants suggested that the negligence claim was brought against OSF as an employer rather than a premises owner. Therefore, while the "nature of the claim"—a negligence action—is apparent from the complaint, it cannot be said that Gilbert provided "fair notice" of the "'grounds' on which the claim rests"—the duty owed by OSF as the premises owner to its invitees. Twombly, 127 S. Ct. at 1965 n.3.

Gilbert attempts to demonstrate that she provided "fair notice" of the premises liability claim by noting that OSF denied being in control of the restaurant's premises in its own position statement in a Rule 26(f) report, and

that questions relating to OSF's potential premises liability were asked during discovery. These arguments were not raised in response to OSF's motion for summary judgment, and thus are waived. See, e.g., Keelan v. Majesco Software, Inc., 407 F.3d 332, 339–40 (5th Cir. 2005). In addition, there is no support for the proposition that either the defendant's pleadings or the discovery process, without any amendment to a plaintiff's pleadings, can serve to add new grounds for relief to the complaint.

Gilbert has failed to state a proper negligence claim based on OSF's liability as the owner of the Texarkana restaurant's premises. Accordingly, we affirm the district court's grant of summary judgment on Gilbert's supposed premises liability claim.

B. OSF's Duty to the Decedents

Gilbert also challenges the district court's granting of summary judgment on her claim that OSF owed a duty to the decedents as employees of its independent contractor, OSRS. Under Texas law, "[b]ecause an independent contractor has sole control over the means and methods of the work to be accomplished, . . . the individual or entity that hires the independent contractor is generally not vicariously liable for the tort or negligence of that person." Baptist Mem'l Hosp. Sys. v. Sampson, 969 S.W.2d 945, 947 (Tex. 1998). Therefore, "[o]rdinarily, a general contractor does not owe a duty to ensure that an independent contractor performs its work in a safe manner." Lee Lewis Constr., Inc. v. Harrison, 70 S.W.3d 778, 783 (Tex. 2001).

However, "a general contractor may owe a duty of reasonable care to a subcontractor's employee, and consequently may be liable for injury to that employee, if the general contractor retains control over part of the work to be

9

performed." Id. The scope of a general contractor's duty to the employees of its general contractor is thus "limited to the scope of its retained supervisory control." Hoechst-Celanese Corp. v. Mendez, 967 S.W.2d 354, 357 (Tex. 1998). Accordingly, "[f]or the general contractor to be liable for negligence, its supervisory control must relate to the condition or activity that caused the injury." Id. (internal quotation omitted).

Gilbert argues that OSF had retained sufficient control over the activities of OSRS to owe a duty of reasonable care to employees of OSRS, including the decedents. In the proceedings below, the district court rejected this argument, holding that because OSF had established that OSRS was an independent contractor that hired the assailants, Gilbert had failed to raise a genuine issue of material fact as to OSF's liability for OSRS's hiring of the assailants. On appeal, Gilbert contends that its negligence claim was not based on the hiring of the assailants—which she admits was under OSRS's control—but rather on OSF's retained control over the security and safety of the decedents' workplace.

This argument is nothing more than an attempt by Gilbert to salvage her inadequate premises liability claim. As explained above, the complaint relies entirely on OSF's alleged status as the employer of the decedents and the former employer of the assailants. It claims that OSF hired and terminated employees with criminal backgrounds—the assailants—and employed the decedents in positions that placed them at risk of becoming victims of violent crimes, in particular in light of the assailants' "vendetta" against OSF. The complaint does not contain a single allegation relating to OSF's duty to maintain a safe workplace or to the unsafe condition of the restaurant. Therefore, Gilbert has

failed to state a negligence claim based on the existence and breach of a duty to ensure the general safety of the decedents' workplace.

Even assuming that the complaint's broad negligence claim properly encompassed this theory of liability, Gilbert has failed to raise a genuine issue of material fact as to OSF's control over safety and security issues at the Texarkana restaurant. Gilbert notes that the contract between OSF and OSRS, which provides that OSRS had sole authority to hire, train and discharge any restaurant personnel and management, does not expressly address OSRS's duty to provide safety and security to its employees. Gilbert also points to statements made during deposition by Paul Avery, the president of OSF, and Blaise Hadley, the joint venture partner for the Texarkana and several other Outback restaurants in Texas. They testified that OSF held the lease to the Texarkana restaurant, owned the Outback intellectual property rights—including its logo, recipes, and a document used for training of Outback personnel—, and required Outback restaurants to follow corporate guidelines and procedures regarding food preparation and recipes. Avery also testified that he would not allow an Outback restaurant to be operated in an area he felt was unsafe, that he had at various points reminded his joint venture partners and franchisees of the need to utilize and test security alarms, and that he had occasionally retained security consultants to contribute to Outback restaurants' security procedures. According to Gilbert, this evidence shows that OSF had retained control over the operations of the Texarkana restaurant, including the security and safety of the facility.

Gilbert's evidence regarding OSF's retained supervisory control over food preparation, recipes and other intellectual property rights is irrelevant to the negligence claim because this control does not "relate to the activity that actually

caused the injury." Coastal Marine Serv. of Tex., Inc. v. Lawrence, 988 S.W.2d 223, 226 (Tex. 1999). The evidence regarding OSF's concern and input over safety procedures at restaurants is also unavailing. The standard to determine whether a general contractor has retained a right to control the activities of its independent contractor is "narrow"; in order to give rise to a duty of care, the general contractor must have "at least the power to direct the order in which work is to be done or the power to forbid it being done in an unsafe manner." Id. "It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations." Hoechst-Celanese, 967 S.W.2d at 356.

Here, pursuant to the employment services agreement with OSF, OSRS had full control over the training and supervision of management and personnel at the Texarkana restaurant. In addition, the lease between OSF and OSD provided: "SECURITY. [OSD] shall have full responsibility for protecting the Premises and the property located therein from theft and robbery." OSD was also responsible for all maintenance and improvements, and OSF had limited rights of access. For Texas law to impose a duty to protect against the criminal acts of third parties, it must be established that "the defendant had specific control over the security of the premises where the criminal act took place," rather than a "more general right of control over operations." Centeq Realty, Inc. v. Siegler, 899 S.W.2d 195, 199 (Tex. 1995). In this case, OSD had sole control over the Texarkana restaurant's premises, including any security issue.

Therefore, whether the alleged security defects of the decedents' workplace were attributable to a lack of training or supervision, or to the condition of the

12

premises, Gilbert has failed to raise a genuine issue of material fact as to OSF's retained "supervisory control" over the safety of the restaurant. Accordingly, we affirm the district court's grant of summary judgment on Gilbert's claim that OSF owed a duty to the decedents as employees of OSRS.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.